In re Beverly Dell WEST, Debtor.

Beverly Dell WEST, Appellant,

v.

UNITED STATES of America, Appellee.

In re Robert Wesley WORTHEN, Debtor.

Robert Wesley WORTHEN, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 92–35286, 92–35293.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 30, 1993.

Decided Sept. 21, 1993.

Wayne Godare, Snyder & Associates, Portland, OR, for appellants.

Gary R. Allen, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Before: BROWNING, SCHROEDER, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Chapter 13 debtors Beverly West and Robert Worthen appeal the district court's reversal of bankruptcy court orders denying priority to tax claims of the Internal Revenue Service. The district court held that the debtors' prior Chapter 13 case suspended Bankruptcy Code § 507(a)(7)(A)(ii)'s 240–day priority period until six months after the debtors dismissed that case. We affirm.

## I. Background

On June 13, 1988, the IRS assessed income taxes for the years 1982 through 1984 against Beverly and Robert Worthen. Two-hundred and twenty days later, on January 19, 1989, the Worthens filed a joint petition under Chapter 13 of the Bankruptcy Code. On May 30, 1990, the Worthens voluntarily dismissed their case. They divorced shortly thereafter. On July 27, 1990, fifty-eight days after dismissing their joint case, Beverly West and Robert Worthen filed individual Chapter 13 petitions.

The IRS subsequently filed proofs of claim in the West and Worthen cases for the 1982–1984 income taxes. The debtors each filed Chapter 13 plans that provided for payment of the IRS claims on a pro rata basis with the general, unsecured claims. The IRS objected to confirmation on the ground that Bankruptcy Code § 507(a)(7)(A) required that the plans give priority to the tax claims.

The bankruptcy court overruled the IRS objections, reasoning that the IRS was not entitled to priority because it had assessed the taxes more than 240 days before the debtors' individual petitions. The district court reversed, holding that the debtors' prior bankruptcy case suspended the running of the 240–day priority period until six months after the case was dismissed. 137 B.R. 1012 (D.Or.1992).

## II. Statutory Framework

A bankruptcy court may not confirm a Chapter 13 plan unless it provides for "the full payment ... of all claims entitled to priority under section 507" of the Bankruptcy Code. 11 U.S.C. § 1322(a)(2) (1988).

Section 507 accords priority, in part, to government claims for income taxes "assessed within 240 days ... before the date of the filing of the petition." *Id.* § 507(a)(7)(A)(ii).[1]

Section 108(c) of the Bankruptcy Code provides for the suspension of certain nonbankruptcy statutes of limitation on actions against a debtor in bankruptcy.[2] Section 6503 of the Internal Revenue Code, which suspends the limitation period on tax collection against a debtor in bankruptcy until six months after the debtor's case is dismissed,[3] is one example of a nonbankruptcy provision within the scope of § 108(c).

### III. Contentions of the Parties

The debtors concede that, because the IRS assessed the taxes at issue within 240 days before their joint Chapter 13 petition, the tax claims in that case would have been entitled to priority under § 507(a)(7)(A). The debtors assert, however, that priority status in their individual cases is inappropriate because 774 days had elapsed between the time of assessment and the date on which they filed their individual petitions. The bankruptcy court agreed.

The IRS argues that, read together, the Bankruptcy and Internal Revenue Codes suspend § 507(a)(7)(A)'s priority periods from the time a debtor files for bankruptcy until six months after the case is dismissed. The IRS concedes that § 108(c), which incorporates only nonbankruptcy law, does not

facially apply to suspend the bankruptcy law priority periods. It urges, however, that § 108(c)'s incorporation of § 6503's suspension and extension illustrates a statutory purpose to preserve the collectibility of certain tax claims and that, as a result, the suspension and extension must also apply to the priority periods. The district court agreed and reversed the bankruptcy court.

### IV. Discussion

We review *de novo* the district court's statutory interpretation. *E.g., Careau Group v. Juan De La Cruz Farm Workers Pension Fund (In re Careau Group),* 923 F.2d 710, 711 (9th Cir.1991).

To begin, we note that interpretation of the Bankruptcy Code "begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (interpreting § 506(b)). *E.g., Patterson v. Shumate,* — U.S. —, —, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992) (interpreting § 541(c)); *Toibb v. Radloff,* — U.S. —, —, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991) (interpreting § 109(d)). Nevertheless, we realize that "in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' ..., the intention of the drafters, rather than the strict language, controls." *Ron Pair,* 489 U.S. at 242, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contrac-*

---

1. "(a) The following expenses and claims have priority in the following order: ...

   (7) Seventh, allowed unsecured claims of governmental units, only to the extent such claims are for—
   (A) a tax on or measured by income or gross receipts— ...
   (ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition." 11 U.S.C. § 507(a)(7)(A)(ii) (1988).

2. "[I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until ... the end of such period, including any suspen-

sion of such period occurring on or after the commencement of the case." 11 U.S.C. § 108(c)(1) (1988).

3. "The running of the period of limitations ... on the making of assessments or collection shall, in a case under [the Bankruptcy Code], be suspended for the period during which the [IRS] is prohibited by reason of such case from making the assessment or from collection and ... [for] 6 months thereafter." 26 U.S.C. § 6503(h)(2) (Supp.1990).

   The IRS may not collect tax claims against a debtor in bankruptcy unless it obtains relief from the automatic stay. *See* 11 U.S.C. § 362(a)(6) (1988). Because such relief is rarely granted, the IRS usually is "prohibited by reason of such case" from collecting taxes until the bankruptcy petition is dismissed. Under § 6503(h)(2), therefore, the collection limitation period usually does not begin to run until six months after dismissal.

*tors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).[4]

The case at bar is one such "rare case." Because literal interpretation of § 108(c) would frustrate the Bankruptcy Code's intricate scheme for the payment of tax claims, we do not adopt the debtors' "plain language" admonitions.

Section 507(a)(7) creates a "delicate balance" between priority and discharge of tax claims. *In re Official Comm. of Unsecured Creditors of White Farm Equip. Co.,* 943 F.2d 752, 757 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1292, 117 L.Ed.2d 115 (1992).[5] The statute's legislative history reveals that, as part of this balance, "Congress intended to give the government the benefit of certain time periods to pursue its collection efforts." *United States v. Richards (In re Richards),* 994 F.2d 763, 765 (10th Cir.1993). "[T]he tax collector ... should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting." S.Rep. No. 989, 95th Cong., 2d Sess. 14 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800.[6]

By incorporating the suspension provisions of the Internal Revenue Code, § 108(c) reflects a policy determination that " 'it would be unfair to allow the statute [of limitations] to run against the government's right to enforce a tax lien when, even if the government did bring suit, it couldn't collect because it couldn't 'get at' the taxpayer's assets.' " *Molina v. United States (In re*

*Molina),* 99 B.R. 792, 794–95 (S.D.Ohio 1988) (quoting *United States v. Verlinsky,* 459 F.2d 1085, 1087 (5th Cir.1972)).[7] Interpreting § 108(c) literally would allow a debtor to create an "impenetrable refuge" by filing a bankruptcy petition, waiting for § 507(a)(7)'s priority periods to expire, and then dismissing the case and refiling shortly thereafter. *Florence v. IRS (In re Florence),* 115 B.R. 109, 111 (S.D.Ohio 1990).[8]

Given the clearly-expressed statutory purpose of providing the IRS with a specific period of time within which to collect taxes, "[s]uch a result is neither required by, nor consistent with, a holistic interpretation of the Bankruptcy Code." *Id.* This is particularly true in light of the established policy that " 'limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government.' " *Badaracco v. Commissioner of Internal Revenue,* 464 U.S. 386, 392, 104 S.Ct. 756, 761, 78 L.Ed.2d 549 (1983) (quoting *Lucia v. United States,* 474 F.2d 565, 570 (5th Cir.1973)).

In the first case to address this issue, *Brickley v. United States (In re Brickley),* 70 B.R. 113 (9th Cir.1986), the Ninth Circuit Bankruptcy Appellate Panel reached the same conclusion. The *Brickley* panel reasoned that a literal reading of § 108(c) "would render the extension of the statute of limitations ... without meaning, since tax collectibility is obviously useless if the tax debt has been discharged." *Id.* at 115.

---

4. "[A] court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute: '... the court will not look merely to a particular clause in which general words may be used, *but will take in connection with it the whole statute ... and the objects and policy of the law....*' ": *Bob Jones Univ. v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983) (quoting *Brown v. Duchesne,* 60 U.S. (19 How.) 183, 184, 15 L.Ed. 595 (1857) (emphasis added)).

5. For example, priority claims are not discharged in Chapter 13 until paid in full. 11 U.S.C. §§ 1322(a)(2), 1328 (1988). Nonpriority claims, however, may be discharged upon pro rata payment with general, unsecured claims. *Id.* § 1328.

6. The House Report evinces a similar concern: "An open-ended dischargeability policy would

provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority had an opportunity to collect any taxes due." H.R.Rep. No. 595, 95th Cong., 1st Sess. 190 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6150.

7. Contrary to the debtors' assertions, tax claim collection and priority are intimately related. The sole function of assigning priority to certain tax claims is to enhance the government's ability to collect those claims.

8. Such an interpretation would also be inconsistent with the maxim *contra non valentem agere, non currit praesciptio* ("the prescription does not run against one unable to act"). *See* 51 Am. Jur.2d *Limitations on Actions* §§ 138–77 (1970).

Nearly every other court that has analyzed the issue has followed *Brickley*.[9] Most recently, the Tenth Circuit applied a different analysis but reached the same conclusion. *See Richards*, 994 F.2d at 765–66 (affirming the bankruptcy court's use of § 105(a) to suspend the 240–day priority period during the course of the debtor's prior bankruptcy). We find *Brickley* persuasive and adopt its reasoning.

■ The debtors contend that, even if the 240–day period stopped running during their prior bankruptcy, the IRS is still not entitled to priority because it actually had 278 days after assessment in which to collect the taxes without hindrance from a pending bankruptcy case (220 days prior to the joint petition plus fifty-eight days after dismissal and before the individual petitions). We disagree. Because we look to Internal Revenue Code § 6503, incorporated through Bankruptcy Code § 108(c), to suspend the priority period, we think it logical to also apply § 6503's six-month extension period.[10]

The six-month extension illustrates a legislative recognition that interruption in collection activity necessitates additional time once the IRS is again free to pursue tax debtors. Although the legislative history is bereft of reasons for granting the extension, common sense dictates that such a period was given in order to provide the IRS with sufficient time to restart and refocus its collection efforts once able to do so. The legislative history of § 108(c), which incorporates § 6503, implicitly acknowledges this purpose:

[Section 108(c) is] designed to minimize the administrative problems governmental tax authorities face, or may face, in collecting taxes in bankruptcy proceedings....

[T]he statute of limitations on collection of a nondischargeable Federal tax liability of a debtor will resume running *after 6 months* following the end of the period which the debtor's assets are in the control or custody of the bankruptcy court. This rule will provide the [IRS] *adequate time to collect* nondischargeable taxes *following the end of the [bankruptcy] proceedings.*

S.Rep. No. 989, 95th Cong., 2d Sess. 14–15, 30–31 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800–01, 5816–17 (emphasis added). Adding six months to the priority period in the case of successive bankruptcy petitions preserves this intent.

## V. Conclusion

■ The debtors' joint Chapter 13 case suspended the running of § 507(a)(7)(A)(ii)'s 240–day priority period from the date of the bankruptcy petition until six months after the case was dismissed. The IRS claims are therefore entitled to priority.

**AFFIRMED.**

9. *See Montoya v. United States (In re Montoya)*, 965 F.2d 554, 555–58 (7th Cir.1992); *Linder v. United States (In re Linder)*, 139 B.R. 950, 952–53 (D.Colo.1992); *United States v. Deitz (In re Deitz)*, 116 B.R. 792, 794 (D.Colo.1990); *Molina*, 99 B.R. at 794–95; *Stoll v. IRS (In re Stoll)*, 132 B.R. 782, 784–85 (N.D.Ga.1990); *In re Ross*, 130 B.R. 312, 313–14 (D.Neb.1991); *In re Wise*, 127 B.R. 20, 21–23 (E.D.Ark.1991); *In re Ringdahl*, [1990–91] Bankr.L.Rep. (CCH) ¶ 74,082, 1991 WL 284105 (Bankr.M.D.Fla.1991); *In re Bryant*, 120 B.R. 983, 984–85 (E.D.Ark.1990); *In re Davidson*, 120 B.R. 777, 781–87 (D.N.J.1990); *Florence*, 115 B.R. at 110–13; *In re Quinlan*, 107 B.R. 300, 301 (D.Colo.1989); *In re Ryan*, No. 88–B–07735–A, 1989 WL 155684 (Bankr.D.Colo.1989).

Although *Brickley* and several of these cases actually address the three-year priority period of § 507(a)(7)(A)(i), the analysis applies with equal force to the 240–day priority period. *See Richards*, 994 F.2d at 766 (applying cases construing the three-year period to analyze the 240–day period).

10. Every other case that has mentioned the six-month extension has reached the same conclusion. *See Montoya*, 965 F.2d at 557; *Deitz*, 116 B.R. at 794; *Ross*, 130 B.R. at 313; *Wise*, 127 B.R. at 23. In *Deitz*, as in the case at bar, the additional six-months was the determining factor in whether the tax claims were entitled to priority.