In re William J. ZECCO, Debtor.

William J. ZECCO, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 95–16402–WCH.
Adversary No. 96–1609.

United States Bankruptcy Court,
D. Massachusetts.

May 28, 1997.

Donald K. Stern, U.S. Atty., Boston, MA, Glenn J. Melcher, Tax Div., Dept. of Justice, Washington, DC, for U.S.

George R. Desmond, Framingham, MA, for William J. Zecco.

## MEMORANDUM DECISION

WILLIAM C. HILLMAN, Bankruptcy Judge.

William J. Zecco ("Debtor") commenced this adversary proceeding against the United States of America ("IRS") to determine the dischargeability of certain taxes. By agreement, the parties submitted a Joint Stipulation of Facts (the "Stipulation") and memoranda of law, and I took the matter under advisement on those documents.

### Findings of Fact

IRS is seeking to recover unpaid income taxes for the years 1985–1987, 1989 and 1990, and unpaid FUTA taxes for 1985–1987.[1] The following chronology is taken from the Stipulation.

| Date | Bankruptcy Event | Tax Event |
|---|---|---|
| 05/19/86 | | 1985 return filed |
| 08/12/87 | | 1986 return filed |
| 06/23/88 | Ch. 13 case ("Case I") filed | |
| 09/26/89 | Case I dismissed | |
| 03/16/90 | Ch. 13 case ("Case II") filed | |
| 04/15/90 | | 1989 return filed |
| 04/15/91 | | 1990 return filed |
| 11/21/91 | Amended Order of Confirmation in Case II—See below | |
| 01/27/93 | | 1987 return filed |
| 05/26/94 | Discharge granted in Case II | |
| 09/21/95 | Ch. 7 case ("Case III") filed | |
| 12/28/95 | Discharge entered in Case III | |

The Amended Order of Confirmation in Case II contained the following provision:

It is FURTHER ORDERED that the disputed IRS claim is not part of the Chapter 13 Plan and consequently any Order of Confirmation and the Parties are left to

---

1. IRS concedes that the FUTA tax liability for 1985 is dischargeable and they need not be further considered.

pursue their rigths [sic] Under Applicable Laws.

The Stipulation does not tell me to which years "the disputed IRS claim" relates. As the table indicates, the 1987 return was not filed until more than a year after the Amended Order of Confirmation.

### Discussion

In brief, Debtor argues that the taxes in issue are dischargeable because they became due more than three years prior to the filing of the original petition in Case III. In response, IRS contends that Debtor's prior bankruptcy cases tolled the applicable statutes.

Taxes are not discharged if they are "of the kind and for the periods specified in section . . . 507(a)(8)." 11 U.S.C. § 523(a)(1)(A) Thus, § 507, primarily a test of priority for distribution purposes, in this instance controls dischargeability as well.

The relevant portion of § 507(a)(8)(A) grants a priority to income taxes

for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.

The parties have agreed that all of the taxes at issue were assessed more than three years before the filing of the petition in Case III. Assuming that (1) the automatic stay prohibited IRS from enforcing collection of the taxes for some portion of the pre-Case III period, and (2) deducting that time from the computation leaves less than three years between assessment and the filing of Case III, then the taxes would be nondischargeable in the present case. All would be dischargeable if no tolling period applies. There is no controlling authority in this Circuit.

We begin "where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Since there is no language in the quoted statutory text either mandating or permitting tolling, that possibility is permitted only if this is one of those "rare cases" in which "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Id.* at 242, 109 S.Ct. at 1031.

Absence of tolling would permit a scenario where a tax debtor could file a petition under Title 11 and allow the automatic stay to consume much or all of the three year period, then dismiss or otherwise terminate the earlier case and file anew, more than three years after the original assessment, and obtain discharge from the tax liabilities. This would not be a desirable conclusion. As Chief Justice Taney has stated:

[I]t is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give it such a construction as will carry into execution the will of the Legislature, as thus ascertained, according to its true intent and meaning.

Neither will the court, in expounding a statute, give to it a construction which would in any degree disarm the Government of a power which would enable individuals to embarrass it, in the discharge of the high duties it owes to the community——unless plain and express words indicated that such was the intention of the Legislature.

*Brown v. Duchesne*, 60 U.S. (19 How.) 183, 194–195, 15 L.Ed. 595 (1856). *See also Bob Jones Univ. v. United States*, 461 U.S. 574, 586, 103 S.Ct. 2017, 2025–26, 76 L.Ed.2d 157 (1983), and *West v. United States (In re West)*, 5 F.3d 423 (9th Cir.1993), *cert. denied* 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994) (both quoting *Brown*).

This issue has been the subject of numerous conflicting rulings from the federal courts.

The first court of appeals decision appears to be *Montoya v. United States (In re Montoya)*, 965 F.2d 554 (7th Cir.1992). The facts and positions of the parties were substantively the same as in the present case. The Seventh Circuit held that the three year

period was tolled during the pendency of the prior cases. In so doing, it relied on 11 U.S.C. § 108(c)[2] and 26 U.S.C. § 6503(h)(2).[3] It also adopted the decision of the Ninth Circuit Bankruptcy Appellate Panel in *Brickley v. United States (In re Brickley)*, 70 B.R. 113 (9th Cir. BAP 1986), which a number of other bankruptcy court cases have followed.[4]

The essence of *Brickley* is that "to follow the Debtor's argument [that tolling is inapplicable] would render the extension of the statute of limitations in Section 108(c) without meaning, since tax collectability is obviously useless if the tax debt has been discharged." 70 B.R. at 115. The precedential value of *Montoya* is weakened by the fact that both parties appear to have agreed that the *Brickley* analysis was appropriate. 965 F.2d at 556. The Third and Eighth Circuits, however, later reached the same conclusion and for largely the same reasons. *Waugh v. Internal Revenue Service (In re Waugh)*, 109 F.3d 489 (8th Cir.1997); *In re Taylor*, 81 F.3d 20 (3d Cir.1996).

In *West, supra*, the Ninth Circuit addressed the 240 day period of what is now 11 U.S.C. § 507(a)(8)(A)(ii), rather than the three year period of the immediately preceding subsection as here. The context was whether the taxes in question were entitled to priority and hence full payment in a Chapter 13 plan under 11 U.S.C. § 1322(a)(2). However, the principle applied was the same. Paralleling the reasoning of *Montoya*, the court concluded that:

> Interpreting § 108(c) literally would allow a debtor to create an "impenetrable refuge" by filing a bankruptcy petition, waiting for § 507(a)(7)'s [now (8)'s] priority periods to expire, and then dismissing the case and refiling shortly thereafter.

5 F.3d at 426.

The Second Circuit considered whether § 108(c) tolls the Uniform Statute of Limitations for Maritime Torts, 46 U.S.C.App. § 763(a), which does not itself contain any tolling language, and held that it did not:

> The bankruptcy section only calls for applicable time deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay, if any such deadline would have fallen on an earlier date. The reference in § 108(c)(1) to "suspension" of time limits clearly does not operate in itself to stop the running of a statute of limitations; rather, this language merely incorporates suspensions of deadlines that are expressly provided in other federal or state statutes.

It held that the plaintiff had thirty days from the grant of relief from stay in the bankruptcy case to commence his action. *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir.1993). This language is an indication that the Second Circuit would incorporate the tolling language of 26 U.S.C. § 6502(h)(2) into the three year limitation expressed in the Bankruptcy Code. One lower court in the circuit has so held. *In re Eysenbach*, 183 B.R. 365 (W.D.N.Y.1995).

The Tenth Circuit also found tolling applicable but relied entirely on the general equitable powers of the bankruptcy court under

---

**2.** (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of-
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay under section 362, 922,

1201, or 1301 of this title, as the case may be, with respect to such claim.

**3.** "The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—
(1) for assessment, 60 days thereafter, and
(2) for collection, 6 months thereafter."

**4.** *See, e.g., United States v. Deitz (In re Deitz)*, 116 B.R. 792 (D.Colo.1990); *Molina v. United States (In re Molina)*, 99 B.R. 792 (S.D.Ohio 1988).

11 U.S.C. § 105(a).[5] *United States v. Richards (In re Richards)*, 994 F.2d 763 (10th Cir.1993).

The situation is somewhat curious in the Fifth Circuit. In a case involving the effect of § 108(c) on a state tort claim statute of limitations the court held that:

> § 108(c) does not create a separate tolling provision. The statute plainly states that for the time period to be suspended, other federal or state law must mandate it and then be incorporated through § 108(c). Otherwise, a party must file suit within the thirty-day grace period after the end of the stay.

*Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 297 (5th Cir.), *cert. denied*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

From this one might conclude that, if the non-bankruptcy statute *did* contain a tolling provision, it would be enforced though § 108(c), a result parallel to *Aslanidis.* However, in an earlier decision, *Quenzer v. United States (In re Quenzer)*, 19 F.3d 163 (5th Cir.1993), the court had held, without citation of authority, that § 108(c) only applied "to nonbankruptcy law and nonbankruptcy proceedings". *Ibid.* It refused to consider the equitable tolling argument advanced by IRS under § 105(a) as it had not been presented at the trial level. While I question the validity of the court's reasoning in *Quenzer,* it probably represents a holding by the Tenth Circuit contrary to the other decisions on that level, with the § 105(a) issue left open.

Thus we see that the position of IRS is supported by not fewer than five courts of appeals — six if my prediction of the Second Circuit's view is correct — with only one possibly to the contrary.

The lower court cases from the Eleventh Circuit are split. In favor of the majority view are *Teeslink v. United States (In re Teeslink)*, 165 B.R. 708, 710 (Bankr.S.D.Ga. 1994) and *In re Cowart*, 199 B.R. 799 (Bankr. M.D.Fla.1996) (Judge Funk). Contrary are

*Turner v. United States (In re Turner)*, 182 B.R. 317 (Bankr.N.D.Ala.1995) and *In re Macko*, 193 B.R. 72 (Bankr.M.D.Fla.1996) (Judge Proctor)

Both bankruptcy court decisions from the Sixth Circuit deny tolling. *In re Pastula*, 203 B.R. 941 (Bankr.E.D.Mich.1997); *Nolan v. United States (In re Nolan)*, 205 B.R. 885 (Bankr.M.D.Tenn.1997).

There are no lower court decisions in this circuit. Judge Woodlock has held the same maritime statute of limitations involved in *Aslanidis* was tolled by 11 U.S.C. § 362, without reference to § 108(c). *McKinney v. Waterman Steamship Corp.*, 739 F.Supp. 678 (D.Mass.1990), *aff'd*, 925 F.2d 1 (1st Cir. 1991). *Aslanidis* suggests that the statement is *dicta,* 7 F.3d at 1074, but it would appear to support the conclusion which I adopt here.

■ I agree with the majority decisions for the reasons stated in *Montoya, Brickley, Taylor* and *Waugh;* that is, I conclude that the tolling provision of 26 U.S.C. § 6503(h)(3) is activated in the bankruptcy context by § 108(c) of the Bankruptcy Code and hence the taxes in the present case, absent anything else, would continue to be nondischargeable priority claims. Since § 6503(h)(3) does contain a tolling provision, I need not decide whether tolling is inherent in § 108(c) itself.

■ I must next address the language in the Amended Order of Confirmation, quoted early in this decision. If the date of the entry of that order effected relief from the automatic stay and IRS was able to proceed with its collection efforts from that time, the limitations period for the "disputed IRS claim" ran again from November 21, 1991. *Aslanidis, supra.* That date is more than three years plus six months from the date of the filing of the petition in Case III, and would result in dischargeability of the taxes in issue. Debtor, of course, adopts this position.

---

**5.** "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to pre- clude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

IRS, on the other hand, rejects that interpretation out of hand:

> First ... the Order does not state that it lifts the automatic stay. Second, had the IRS been able to collect the liability of the plaintiff during the pendency of the plaintiff's Chapter 13, the IRS would have been entitled to seize the very funds that were to be used to fund the plaintiff's Chapter 13 plan. Had the IRS done so, the plaintiff would have been unable to complete his plan, and his case would have had to have been dismissed. As the Order was entitled "Amended Order of Confirmation," it seems unlikely that the Court would have intended such an absurd result to follow from its Order.

One need not, however, adopt either of these extreme views. While the language used in the Amended Order of Confirmation is enigmatic, it can be construed in a rational way between the positions taken by the parties.

It is not uncommon for a bankruptcy court to grant a limited relief from stay so that the amount of a claim can be quantified in some other forum. The terms of those orders permit the other proceeding to continue to judgment but not beyond. •

Reading the Amended Order of Confirmation in accordance with this practice, I construe the quoted language to permit the debtor and IRS to resolve their dispute as to the amount due outside of the bankruptcy court. If the debtor prevails and nothing is due to IRS, the matter terminates. If the resolution shows amounts due to IRS, it would be necessary to amend the Chapter 13 plan to take the priority claim into account.

While this is hardly a neat solution, I believe it to be the most reasonable reading of the language in the circumstances of this case.

Having so decided, I find that the automatic stay continued to bar IRS' collection efforts until it terminated by the grant of a discharge in Case II on May 26, 1994.

The tax returns for 1989, 1990 and 1987 were filed during the pendency of Case II, and the three year period was tolled as to them. The period between the granting of the discharge in Case II and the filing of Case III is less than three years. As a result, I find that the claim of IRS remains entitled to priority for those years in Case III.

The tax return for 1985 was filed May 19, 1986, although it was not required to be filed until August 15, 1986, as the taxpayer had obtained an extension and the latter is the date upon which the return is "last due" under 11 U.S.C. § 507(a)(8)(A). Case I was filed June 23, 1988, thus invoking the automatic stay after 677 days had expired.[6] That case was dismissed on September 26, 1989 and Case II was not commenced until March 16, 1990, a period of less than six months after the termination of Case I and hence is within the tolling period as a result of 26 U.S.C. 6503(h)(2) and need not be considered. Another six month period began to run after Case II was closed by the granting of a discharge on May 26, 1994, which continues the tolling period to November 26, 1994. Case III was commenced on September 21, 1995, which is 298 days after the end of the tolling period. Adding 677 days and 298 days gives a total of 975 days. Three years of 365 days total 1,095 days. The total period to be computed is less than three years and hence the taxes for 1985 remain nondischargeable and entitled to priority.

The 1986 return was filed on August 12, 1987. The collection period of taxes due thereunder is less than that available for the 1985 taxes. As a result, the collection period available to IRS is less than for the 1985 taxes and less than three years has expired for limitation purposes.

### Conclusion

I find that all of the taxes claimed by IRS, with the exception of FUTA tax liability for 1985, remain entitled to priority and are nondischargeable in the present case.

A separate order will enter.

6. Fed.R.Civ.P. 6(a). The year 1988 was a leap year.