**In re Jules M. AVILA, Jr., and Loretta I. Avila, Debtors.**

**Bankruptcy No. 97–21472–CJK.**

United States Bankruptcy Court, D. Massachusetts.

Jan. 7, 1999.

Susan M. Poswistilo, Boston, MA, Assistant U.S. Attorney.

Henry J. Riordan, Washington, DC, Trial Attorney, Tax Division, U.S. Dept. of Justice.

Carlton J. Dassent, for Debtors.

## MEMORANDUM OF DECISION ON DEBTOR'S OBJECTION TO FEDERAL TAX CLAIM

CAROL J. KENNER, Chief Judge.

In this case under Chapter 13 of the Bankruptcy Code, the United States has filed a proof of claim against Debtor Jules M. Avila, Jr. for, among other things,[1] income taxes for calendar year 1992. The United States contends that this claim has priority status under § 507(a)(8)(A)(i) of the Bankruptcy Code. That subsection states that an unsecured claim of a governmental entity has priority to the extent that the claim is for a tax on income "for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(A)(i). The Debtor objects to this claim on two grounds: that it was discharged in the Chapter 7 case that the

Debtors filed in 1997; and, in the alternative, that it does not qualify for priority under § 507(a)(8)(A)(i) because the return for those taxes was last due on April 15, 1993, a date more than three years before the date of the filing of the petition in this case, December 5, 1997. The United States responds that its claim was excepted from discharge in the Chapter 7 case by operation of § 523(a)(1)(A) (which excepts from discharge the claims having priority under § 507(a)(8)) and § 507(a)(8)(A)(i), and enjoys priority status in this case because, although both cases were commenced more than three years after the tax return was due, the three year period in § 507(a)(8)(A)(i) was tolled (1) while the automatic stay was in effect during the three bankruptcy cases (the Chapter 7 and two preceding Chapter 13 cases) that the Debtors filed before this one and (2), by operation of 26 U.S.C. § 6503(h), for six months after termination of the stay in each of those cases. The Debtors respond that, by the plain language of § 507(a)(8)(A)(i), the three-year period is absolute, not tolled by the automatic stay or for any period after its termination. For the reasons set forth below, I hold that the three-year period in § 507(a)(8)(A)(i) was tolled while the IRS was prevented by the automatic stay from collecting the taxes, but not for an additional six months after termination of the stay in each case.

### FACTS

The parties have stipulated to the relevant facts. The Debtors' federal income tax return for the taxable year ended December 31, 1992, was due on April 15, 1993. On May 10, 1994, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code, thereby commencing Case No. 94–13110–CJK ("Case

---

1. The United States' proof of claim asserts three categories of tax claims: a secured claim in the amount of $39,920.24, to which the Debtors have no objection and which therefore has been allowed; an unsecured priority claim in the amount of $33,511.06, to which the Debtors object; and a general unsecured claim in the amount of $60,167.31, to which the Debtors also object. All three claims are asserted against Jules Avila only, not against his spouse and joint debtor in this case, Loretta Avila. This memorandum addresses only a portion of the priority claim. The Debtors' objection to the general unsecured claim will have to be resolved separately.

The priority claim includes liability for income taxes that accrued in 1992—the liability at issue in this memorandum—and in 1994 and 1995. The Debtors initially objected to the amounts claimed due for 1994 and 1995. However, by agreement, the parties have now quantified and I have allowed the claim for 1994 taxes in the amount of $3,653.60. At the hearing on this motion, the Debtors conceded the priority of the 1994 and 1995 taxes, and their Chapter 13 plan proposes to pay the liability for those years in full.

I"). Case I was dismissed on August 30, 1994. On July 26, 1995, the Debtors filed a second petition under Chapter 13, thereby commencing Case No. 95–15041–CJK ("Case II"). Case II was dismissed on May 17, 1996. On February 18, 1997, the Debtors filed a petition under Chapter 7 of the Bankruptcy Code, thereby commencing Case No. 97–11488–CJK ("Case III"). In Case III, the Court granted the Debtors a discharge under § 727(b) of the Bankruptcy Code on July 24, 1997. [The docket in Case III indicates that it was closed on August 22, 1997; the stipulation does not specify when Case III was closed.] On December 5, 1997, the Debtors filed the Chapter 13 petition that commenced the present case ("Case IV"). By the proof of claim at issue in this proceeding, the United States is asserting an unsecured priority tax claim for the unpaid income tax liability of Debtor Jules Avila for the taxable year ended December 31, 1992.

On the basis of these stipulated facts, I make the following factual deductions and arithmetic conclusions. As of the date on which the Debtors commenced Case III (the Chapter 7 case), 3 years and 308 days had passed since the date on which the return for 1992 income taxes was due. During that time, the United States was stayed from collecting those taxes by the automatic stay, 11 U.S.C. § 362(a), from the date on which each Chapter 13 case was commenced to the date on which it was dismissed,[2] a total of 409 days (112 days in Case I and 297 days in Case II). Therefore, between the date on which the returns were due and the start of the Chapter 7 case, the United States was free to collect the 1992 income taxes for a total of only 2 years and 264 days.

Termination of the stay in the Chapter 7 case did not occur on one date but on two. Upon entry of the Debtors' discharge, the automatic stay was terminated with respect to all acts other than those against assets of the estate. 11 U.S.C. § 362(c)(2)(C). When the case was closed, the properly scheduled and not otherwise administered property of the estate was deemed abandoned, 11 U.S.C. § 554(c), and the stay terminated as to acts against property of the estate. 11 U.S.C.

§ 362(c)(1). If termination of the stay is measured from the date of the Debtors' discharge (as the United States measures it), then the United States was free to collect its debt for 1992 income taxes for an additional 133 days before commencement of the present case. If termination of the stay is measured from the date the case was closed, then the United States was free to collect its debt for 1992 income taxes for an additional 104 days before commencement of the present case. Either way, when added to the earlier 2 years and 264 days, the total time before commencement of the present case during which the United States was not subject to the automatic stay exceeds 3 years.

## DISCUSSION

### 1. *Dischargeability in the Chapter 7 Case: Tolling by the Automatic Stay*

The first issue presented is whether the debt was excepted from the scope of the Debtors' Chapter 7 discharge. (A ruling that the debt was discharged would obviate the issue of the debt's priority in this case.) Section 523(a)(1)(A) of the Bankruptcy Codes provides that "a discharge under section 727 of this title does not discharge an individual debtor from any debt for a tax or a customs duty of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." 11 U.S.C. § 523(a)(1)(A). The United States contends that the Debtor's income tax liability for 1992 is excepted from discharge by § 523(a)(1)(A) because it is of a kind and for a period specified in § 507(a)(8), specifically, a tax on income "for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(A)(i). As the party contesting the dischargeability of the debt, the United States bears the burden of proof. *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir.1997).

The United States can establish that the 1992 tax debt is excepted from discharge only if the three-year period in § 507(a)(8)(A)(i) was tolled. The United

---

2. See 11 U.S.C. § 362(c)(2)(B).

States contends that the period was tolled by the automatic stay in the two Chapter 13 cases and, by operation of 26 U.S.C. § 6503(h), for six months after termination of the stay in each case. I begin with the argument for tolling by the automatic stay.

■ The majority of courts that have addressed this issue, including three of four Courts of Appeals and the Ninth Circuit Bankruptcy Appellate Panel, have held that the three-year period in § 507(a)(8)(A)(i) is tolled by and during the pendency of the automatic stay.[3] No two of the majority courts follow exactly the same reasoning to their common conclusion, but all agree that the three-year reach-back period in § 507(a)(8)(A)(i) was intended by the legislature to afford the taxing authority at least three years to collect taxes before they could be discharged in Chapter 7. Consequently, they conclude, § 507(a)(8)(A)(i) cannot effectuate the intent of the legislature unless the three-year period is tolled while the taxing authority is stayed from collecting the tax. In these essentials—though not in many of the particulars, as I will explain below—I find the reasoning of the majority to be sound. Accordingly, I hold that the three-year period in § 507(a)(8)(A)(i) must be construed to exclude any time during which the taxing authority is stayed by the automatic stay from collecting the taxes.

■ In reaching this conclusion, I rely solely on § 507(a)(8)(A)(i) and its legislative history. The legislative history indicates that, by enacting § 507(a)(8)(A)(i) (especially insofar as it pertains to dischargeability), Congress sought to balance competing interests, including that of "the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting." S.Rep. No. 95–989, at 14 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5800.

To satisfy the interests of the "tax collector," Congress extended a three-year priority period to tax collecting authorities. [S.Rep. No. 95–989, at 14 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5800.] Although a debtor is permitted to discharge tax debts which have grown "stale," Congress realized that "[a]n open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due." H.R.Rep. No. 95–595, at 190 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6150.

In re Waugh, 109 F.3d 489, 492 (8th Cir. 1997). Congress thus intended by § 507(a)(8)(A)(i) to guaranty to taxing authorities a period of three years in which to collect taxes before they would become dischargeable in Chapter 7. Moreover, Congress clearly contemplated that these three years would constitute time in which the authorities could collect the taxes. By definition, this excludes time in which collection was prohibited by law. In the words of the Senate Report, the tax collector "should not lose taxes … which the law has restrained him from collecting." S.Rep. No. 95–989, at 14 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5800. Section 507(a)(8)(A)(i) cannot effect its purpose and is effectively subverted unless its three-year period is understood to exclude

---

**3.** See In re Waugh, 109 F.3d 489 (8th Cir.1997); In re Taylor, 81 F.3d 20, 24 (3d Cir.1996); Montoya v. United States (In re Montoya), 965 F.2d 554, 557 (7th Cir.1992); Brickley v. United States (In re Brickley), 70 B.R. 113, 115 (9th Cir. BAP 1986); Shedd v. United States (In re Shedd), 190 B.R. 692, 694 (Bankr.M.D.Fla.1996); In re Eysenbach, 183 B.R. 365, 369 (W.D.N.Y.1995); Teeslink v. United States (In re Teeslink), 165 B.R. 708, 712–13 (Bankr.S.D.Ga.1994); In re Ross, 130 B.R. 312, 313 (Bankr.D.Neb.1991); In re Wise, 127 B.R. 20, 22 (Bankr.E.D.Ark.1991); Florence v. IRS (In re Florence), 115 B.R. 109, 112–13 (Bankr.S.D.Ohio 1990); cf. West v. United States (In re West), 5 F.3d 423, 426 (9th Cir.1993) (holding that 26 U.S.C. § 6503, incorporated through 11 U.S.C. § 108(c), operates to extend the priority period of 11 U.S.C. § 507(a)(8)(A)(ii)), cert. denied, 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); United States v. Richards (In re Richards), 994 F.2d 763, 765 (10th Cir.1993) (holding that 11 U.S.C. § 105(a) operates to extend the priority period of 11 U.S.C. § 507(a)(7)(A)(ii)). But see Quenzer v. United States (In re Quenzer), 19 F.3d 163, 165 (5th Cir.1993) (holding that under the plain language of section 108(c) the statute does not suspend the priority period of section 507(a)(8)); Clark v. IRS (In re Clark), 184 B.R. 728, 730–31 (Bankr.N.D.Tex.1995) (same); Gore v. United States (In re Gore), 182 B.R. 293, 300–01 (Bankr. N.D.Ala.1995) (same).

time in which the taxing authority is constrained by law from collecting the tax. Therefore, although the Bankruptcy Code does not expressly provide for tolling of the three-year period during the pendency of the automatic stay (or during any other period during which the law prohibits the collection of taxes), such a tolling requirement is implicit in § 507(a)(8)(A)(i) itself: "three years" in § 507(a)(8)(A)(i) means three years in which the taxing authority is free to collect the tax.[4] Other courts that have reached the same result (that the three-year period is tolled by the automatic stay) have done so more circuitously: instead of relying solely on § 507(a)(8)(A)(i), they have had recourse, variously, to §§ 108(c) and 105(a) of the Bankruptcy Code and to § 6503(h) of the Internal Revenue Code. For present purposes, I need not explain why I do not rely on those sections. I only point out *that* I do not rely on them.

In summary, I hold that the three-year period in § 507(a)(8)(A)(i) is tolled while the taxing authority is prohibited by law, including the automatic stay, from collecting the tax at issue. Because the United States was free to collect the taxes at issue for less than three years between the date on which the

return was due and the date on which the Debtors' commenced their Chapter 7 case, the taxes were excepted from discharge in the Chapter 7 case.

2. *Priority in the Present Case: Tolling under 26 U.S.C. § 6503(h) for 6 Months After Termination of the Stay*

The next issue is whether the 1992 tax debt, having been excepted from discharge in the Chapter 7 case, has priority status in the present case.[5] The United States contends that its claim for 1992 income taxes qualifies for priority under § 507(a)(8)(A)(i). In order to establish the claim's priority under that provision, the United States must show that the three-year period in § 507(a)(8)(A)(i) was tolled not only while the automatic stay was pending in the three bankruptcy cases that preceded this one—I have already ruled that the period was so tolled—but also for six months after termination of the stay in each of those cases. As of the start of this case, the United States was free to collect the taxes at issue for more than three years; without the benefit of additional tolling,[6] the claim cannot qualify for priority.

In support of the proposition that the three-year period is tolled for six months

4. Lest there be any doubt, the automatic stay applies "to all entities," 11 U.S.C. § 362(a), including taxing authorities, and, despite an express exception (created in 1994) for certain activities related to tax collection, it prohibits the actual collection of taxes. By virtue of the exception, the various provisions of the stay, enumerated in § 362(a), do not stay

   (A) an audit by a governmental unit to determine tax liability;
   (B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;
   (C) a demand for tax returns; or
   (D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

   11 U.S.C. § 362(b)(9). In all other respects, however, the stay applies to taxing authorities. It prohibits them from, among other things, commencing or continuing a proceeding before the United States Tax Court concerning the debtor,

§ 362(a)(8), and actually collecting or recovering a prepetition tax claim, § 362(a)(6).

5. The issue is important because, in Chapter 13, a priority claim must be paid in full, § 1322(a)(2); but an unsecured claim without priority is not automatically entitled to payment in full. A nonpriority claim must be paid as much as it would receive if the debtor's estate were liquidated under Chapter 7, § 1325(a)(4), and, if the holder of the claim still objects to confirmation of the plan, the holder can insist that the dividend on unsecured claims be enriched to the full extent that the debtor's projected disposable income will permit, § 1325(b)(1)(A), but the Code requires nothing more. If disposable income permits no more than a ten percent dividend and that amount exceeds what the claimant would get in Chapter 7, then the claimant is entitled to only ten percent.

6. The statute on which the United States relies, 26 U.S.C. § 6503(h), would (if it applied) toll the three-year period for an additional six months after termination of the automatic stay in each of the three cases, a total of eighteen months, but the United States needs the benefit of only (at most) 32 days of tolling to prevail.

after termination of the stay, the United States cites (without elaboration or argument) only 26 U.S.C. § 6503(h)(2) and the holding of the Ninth Circuit Court of Appeals in *In re West,* 5 F.3d 423, 427 (9th Cir.1993). Section 6503(h) provides:

> The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—
>
> (1) for assessment, 60 days thereafter, and
>
> (2) for collection, 6 months thereafter.

26 U.S.C. § 6503(h). In *West,* the Ninth Circuit held that "[b]ecause we look to Internal Revenue Code § 6503, incorporated through Bankruptcy Code § 108(c), to suspend the priority period, we think it logical to also apply § 6503's six-month extension period."[7] *In re West,* 5 F.3d at 427. Section 108(c) of the Bankruptcy Code states:

> (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c). *West* does not explain *how* § 6503(h)(2) applies through § 108(c) to extend the three-year period in § 507(a)(8)(A)(i).

■ For several reasons, I disagree with *West* and find no cause for expanding the three-year period in § 507(a)(8)(A)(i) by an additional six months. Most importantly, the plain language of § 108(c) and § 6503(h) specifies that they do not apply to § 507(a)(8)(A)(i). To conclude that § 108(c) makes § 6503(h)(2) applicable to the three-year period in § 507(a)(8)(A)(i), one must surmount not one but three indications to the contrary in the language of these three sections. First, section 108(c) expressly provides that it applies to periods fixed by "*non* bankruptcy law" (emphasis added). The three-year period in § 507(a)(8)(A)(i), being a period fixed by the Bankruptcy Code, is thus expressly excluded from the scope of § 108(c). Second, § 108(c) applies only to "a period for commencing or continuing a civil action," not to a period for assessing or collecting a tax (the subject of § 6503(h)(2)), and not to a period defining the priority and dischargeability of a tax claim (the subject of § 507(a)(8)(A)(i)). And third, § 6503(h) expressly provides that it applies to "the period of limitations provided in [Internal Revenue Code] section 6501 or 6502 on the making of assessments or collection." It does not mention § 507(a)(8)(A)(i) or any other provision by which the Bankruptcy Code specifies the priority or dischargeability of taxes. In short, the plain language of both § 108(c) and § 6503(h) not only states that they apply to statutes and matters other than § 507(a)(8)(A)(i); it also gives affirmative cause to conclude that they were *not* intended to apply to § 507(a)(8)(A)(i). For this reason, the Court of Appeals for the Fifth Circuit held that § 108(c) does not apply to the § 507 time limit. *Quenzer v. United States (In re Quenzer ),* 19 F.3d 163, 165 (5th Cir.1993); *Clark v. IRS (In re Clark ),* 184 B.R. 728, 730–31 (Bankr.N.D.Tex.1995) (same); *Gore v. United States (In re Gore ),* 182 B.R. 293, 300–01 (Bankr.N.D.Ala.1995) (same). See also *United States v. Richards*

---

**7.** *West* was concerned with the priority period defined in § 507(a)(8)(A)(ii), not (A)(i), but stated that the relevant analysis applied with equal force to (A)(i) and (A)(ii). *In re West,* 5 F.3d at 427 n. 9.

(*In re Richards*), 994 F.2d 763, 765 (10th Cir.1993) (acknowledging that § 108(c) and § 6503(h) apply to periods other than those in § 507(a)(8)(A), but nonetheless resorting to the Court's equitable power under 11 U.S.C. § 105(a) to toll the priority period of 11 U.S.C. § 507(a)(7)(A)(ii)).

*West,* following *In re Brickley,* 70 B.R. 113 (9th Cir. BAP 1986), ignores these limitations of the plain language in favor of what it reads as the legislative intent behind § 108(c), as evidenced by the following passage from the Senate Report on the Bankruptcy Reform Act of 1978:

> In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for 6 months thereafter (sec. 6503(b) of the Code). The Amendment applies this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of non-dischargeable Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in control or custody of the bankruptcy court. This rule will provide the Internal Revenue Service adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.

S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816, 5817. In *Brickley,* the Bankruptcy Appellate Panel concluded from this statement "that Congress, by enacting Section 108(c), intended to activate Section 6503(b) and thereby suspend the running of the statute of limitations for tax collection during a taxpayer's bankruptcy proceedings." But if the three-year period in § 507(a)(7)(A)(i) were not tolled during while the automatic stay was in effect, the Panel reasoned, "the extension of the statute of limitations in § 108(c) [would be] without meaning, since tax collectability is obviously useless if the tax debt has been discharged." Therefore, the Panel concluded, Congress must have intended that § 6503(b),[8] via § 108(c), would toll the three-year period in § 507(a)(7)(A)(i). *West* took this a step further by holding that, if § 108(c) makes § 6503(h) applicable to the time periods in § 507(a)(7)(A), then those periods are suspended not only while the stay is in effect but also, as § 6503(h)(2) further provides, for an additional six months after the stay lapses.

For the following reasons, I believe that the legislative history of § 108(c) cannot support the holdings in *Brickley* and *West*: it does not establish an intent to use § 6503 to stay the priority periods in § 507(a)(7)(A) during the pendency of the automatic stay, much less for an additional six months after its termination. First, as I outlined above, the express language of these statutes, which is the best indicator of legislative intent, is clear and contrary to the legislative intent as construed in these cases.

Second, insofar as § 507(a)(8)(A)(i) acts to define the age beyond which a tax debt becomes dischargeable in bankruptcy, it represents a decision by Congress to reduce dramatically the time in which the United States can collect a tax. Outside of bankruptcy, the Internal Revenue Code generally affords the United States three years from the date that the return was filed just to assess the tax, 26 U.S.C. § 6501(a), and then an additional *ten* years from the date of assessment to either impose a levy on property or *begin* a proceeding in court to collect the tax. 26 U.S.C. § 6502(a). Section 507(a)(8)(A)(i), on the other hand, permits a debtor to obtain a discharge of the tax debt after the United States has had only three years (from the date on which the return was due) to actually collect the tax. This indicates that Congress intent in § 507(a)(8)(A)(i) was emphatically

---

**8.** Section 6503(b) provides:

> The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.

> It is similar to § 6503(h), except that the latter applies specifically to bankruptcy proceedings and suspends not only the limitations period on collection of taxes but also the period for their assessment.

*not to preserve* for the IRS the generous limitations provisions that it enjoys outside of bankruptcy, including the 6-month extension provided in § 6503(h).

Third, the legislative history of § 507(a)(8)(A)(i) indicates that Congress intended by that subsection to guaranty to governmental units a period of three years to collect taxes. Reading § 6503(h)(2) as a tolling provision for § 507(a)(8)(A)(i) does not merely preserve for the tax collector the full benefit of the three-year period (as does tolling during the pendency of the stay). Rather, it extends the period by six months, a period during which the taxing authority is not impeded by the automatic stay. This goes beyond the legislative purposes that underlie § 507(a)(8)(A)(i) (insofar as, via § 523(a)(1)(A), it serves as a limitation on dischargeability).

Fourth, § 6503(h) of the Internal Revenue Code applies exclusively to the assessment and collection of *federal* taxes, while § 507(a)(8)(A)(i) applies to the tax claims of any "governmental unit." 11 U.S.C. § 507(a)(8) (giving priority to certain claims of "governmental units"). By the Bankruptcy Code's definition, "governmental unit" includes not only the federal government but also the governments of the fifty states and even of foreign states. 11 U.S.C. § 101(27). Congress has given no indication that it intended for § 507(a)(8)(A)(i) to have one meaning for the federal government and a different one for all other governmental units.

Fifth, the strongest reason advanced by the various courts that have relied on § 6503(h) to hold that § 507(a)(8)(A)(i) is tolled during the pendency of the automatic stay is that, without such tolling, the taxing authorities will not receive the full benefit of the three-year period that § 507(a)(8)(A)(i) was meant to afford them. See *Waugh,* 109 F.3d at 493 ("If we applied the plain meaning of section 108(c) and held that the priority period of section 507(a)(8)(A)(i) is not suspended during bankruptcy proceedings, Congress's intent to afford the IRS a three-year priority period for the collection of taxes certainly would be frustrated."). I agree that tolling during the pendency of the stay is necessary to protect the three-year period.

However, because it is necessary, the authority for such tolling is, as I ruled above, implicit in § 507(a)(8)(A)(i) itself, as supported by its own legislative history. There is no lack in § 507(a)(8)(A)(i) that justifies reading into it the tolling provisions of § 6503(h), especially not the provisions for tolling *after* the stay has expired.

And sixth, the Senate Report quoted above speaks not of preserving adequate time to collect all taxes, but only "*nondischargeable* taxes." S.Rep. No. 989, 95th Cong., 2nd Sess. 30-31 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816, 5817 (emphasis added). The intent it expresses is to preserve the nonbankruptcy limitations periods only for nondischargeable taxes, not to employ those periods in determining which taxes are dischargeable.

For these reasons, I conclude that § 6503(h)(2) does not apply to the three-year period in § 507(a)(8)(A)(i), and that the three-year period is not tolled for six months after expiration of the automatic stay. Consequently, the United States' claim for 1992 income taxes does not qualify for priority under that section and shall be treated as a general unsecured claim. A separate order will enter accordingly. The Court will issue a procedural order with respect to the remaining portion of the Debtors' objection to the United States' claim.