

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-1-1996

# In Re: Ralph E Taylor

Precedential or Non-Precedential:

Docket 95-1500

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"In Re: Ralph E Taylor" (1996). *1996 Decisions.* Paper 188.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/188

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 95-1500

———

IN RE:  RALPH E. TAYLOR,

Debtor

Ralph E. Taylor,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. 94-06521)

———

Argued January 30, 1996

BEFORE:  GREENBERG, NYGAARD, and LAY,[0] Circuit Judges

(Filed: April 3, 1996)

———

John     A.     DiGiamberardino
(argued)
Suite 102
833 Park Road North
Wyomissing, PA  19610

Attorney for Appellant

Sarah Holderness (argued)
Gary R. Allen
Gary D. Gray
Annette M. Wietecha
United States Department
   of Justice
Tax Division
P.O. Box 502
Washington, D.C.  20044

---

[0]     *Honorable Donald P. Lay, Senior Judge of the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

-1-

———

OPINION OF THE COURT

———

LAY, Circuit Judge.

Robert Taylor filed a Chapter 13 petition in the Bankruptcy Court for the Eastern District of Pennsylvania on November 19, 1992. He had previously filed a Chapter 13 petition in Michigan. The Michigan bankruptcy petition was dismissed on August 26, 1991. In the Pennsylvania proceedings, the Internal Revenue Service filed an amended proof of claim for taxes from 1987 and 1988,[0] to which Taylor objected on the ground that the taxes at issue were not entitled to priority status because his petition in bankruptcy was filed more than three years after the due date of the relevant tax returns.[0]

The IRS replied that the three-year lookback period under 11 U.S.C. § 507(a)(7)(A)(i) was suspended during the pendency of Taylor's Michigan bankruptcy,[0] when an automatic stay

---

[0] The claim was comprised of a secured claim of $600, an unsecured priority claim of $10,526.54, and an unsecured general claim of $4,189.43.

[0] Taylor's 1987 and 1988 tax returns were the subject of this dispute. His 1987 tax return was due, by virtue of an extension, on August 15, 1988. Thus, four years, three months, and three days lapsed between the due date of Taylor's 1987 return and the filing of the Pennsylvania bankruptcy. Taylor's 1988 tax return was due on April 15, 1989. Thus, three years, seven months, and four days lapsed between the due date of the 1988 tax return and the filing of the Pennsylvania bankruptcy.

[0] Section 507 provided in relevant part:

prevented the government from collecting his tax debt. See 11 U.S.C. § 362(a). The IRS argued that, excluding the period of the Michigan bankruptcy proceeding, less than three years had lapsed between the due dates of Taylor's returns and the filing of Taylor's bankruptcy petition in Pennsylvania.[0]

The Bankruptcy Court issued an order adopting the IRS's position. The court held that the pendency of Taylor's Michigan bankruptcy proceeding tolled the three-year nondischargeability period for unpaid taxes. The district court affirmed, and Taylor appeals.

---

(a) The following expenses and claims have priority in the following order:

\* \* \* \* \* \*

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for --

(A) a tax on or measured by income or gross receipts --

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition; . . . .

The 1994 amendments to § 507 assign the government eighth priority, but this change is not relevant to our appeal. See 11 U.S.C. § 507(a)(8).

[0]Excluding the period of the Michigan bankruptcy proceeding, roughly two years and seven months had lapsed between the due date of the 1987 return and the Pennsylvania filing; roughly one year and ten months had lapsed between the due date of the 1988 return and the Pennsylvania filing.

DISCUSSION

The parties do not dispute that, but for the suspension of the three-year lookback period during the pendency of Taylor's Michigan bankruptcy proceeding, the IRS's tax claims are no longer entitled to priority under § 507(a). Taylor contends that a strict construction of 11 U.S.C. § 507(a) warrants the conclusion that his earlier bankruptcy proceeding in Michigan did not suspend the three-year lookback period. Section 108(c) of the Bankruptcy Code suspends the limitations periods of certain nonbankruptcy statutes which create claims against a debtor in bankruptcy. 11 U.S.C. § 108(c).[0] Taylor urges that it is erroneous to apply § 108(c) and 26 U.S.C. § 6503(h)[0] to a concept

---

[0]Section 108(c) provides in relevant part:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of--
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

[0]26 U.S.C. § 6503(h) provides:

> **Cases under Title 11 of the United States Code**. -- The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such

other than collection or assessment and notes that § 507(a) solely addresses priority among claims. He suggests that, had Congress intended to grant governmental tax claims preferential treatment, it would have done so explicitly, because suspending the lookback period solely for the government creates inequities among unsecured creditors. Sections 507(a)(3) and (4), for instance, grant priority status to certain unsecured claims for wages or benefits earned or arising within 90 or 180 days prior to filing, respectively. But if a bankruptcy were dismissed, Taylor asserts, those expenses yet unpaid would lose their priority status upon the debtor's subsequent filing of a second bankruptcy petition.[9] It is asserted that the government should enjoy no such advantage.

We disagree. First, the fact that there is no explicit provision within § 507(a)(7)(A)(i) which tolls the three-year lookback provision during a period when an automatic stay is in effect under § 362 cannot defeat the statutory purpose of either the Bankruptcy Code or the Internal Revenue Code. To limit § 507(a) in this regard would lead to absurd results, as the government would lose its priority claim to back taxes as a result of the taxpayer's abuse of the bankruptcy process.

---

case from making the assessment or from collecting and --

    (1) for assessment, 60 days thereafter, and

    (2) for collection, 6 months thereafter.
[9]Taylor makes this assumption without citing any authority. To our knowledge, this issue has never been litigated.

Taylor's proposed interpretation also ignores the overall statutory scheme behind a Chapter 13 proceeding. A bankruptcy court may not confirm a Chapter 13 plan unless it provides for "full payment . . . of all claims entitled to priority under section 507" of the Code. 11 U.S.C. § 1322(a)(2). Under the then controlling applicable terms of § 507, tax liabilities due not more than three years prior to the debtor's filing for bankruptcy were given seventh priority. § 507(a). The filing of the debtor's petition for relief triggers the automatic stay as to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement" of the bankruptcy proceeding. § 362(a)(6). The stay remains in effect until the debtor obtains a discharge or the case is closed or dismissed. § 362(c)(2). No discharge can be issued in a Chapter 13 case until the debtor completes payments or is granted a hardship discharge. § 1328(b)(1).[0]

The IRS was completely barred from collecting its pre-bankruptcy tax claims during the pendency of the automatic stay under § 362(a). No discharge occurred in the earlier Michigan bankruptcy proceeding. By excepting tax priorities from discharge, Congress intended to "discourage recourse to bankruptcy as a facile device for evading tax obligations." S. Rep. No. 1158, 89th Cong., 2d Sess. 3 (1966), reprinted in 1966 U.S.C.C.A.N. 2468, 2470 (describing the effect of similar provisions under former Bankruptcy Act). It would be an absurd

---

[0]A hardship discharge does not absolve the debtor of priority tax obligations. §§ 1328(c)(2), 523(a)(1)(A).

result if a debtor, rather than obtaining a complete discharge by paying a priority claim, could avoid the three-year lookback period by voluntarily dismissing a bankruptcy proceeding and thereafter urging that a portion of the three-year period has lapsed.  Surely Congress did not intend to tie the government's hands and then chide it for not throwing its stone.

Federal tolling provisions in general reflect a congressional concern that both creditors generally and the government in particular have adequate time to collect their debts. Section 108(c) of the Bankruptcy Code "extends the statute of limitations for creditors in actions against the debtor, where the creditor is hampered from proceeding outside the bankruptcy court due to the [automatic stay] provisions of 11 U.S.C. § 362." In re Brickley, 70 B.R. 113, 115 (Bankr. 9th Cir. 1986). Likewise, § 6503(h) of the Internal Revenue Code suspends the tax collection limitation period while the debtor's assets are in the custody or control of any court and for an additional six months after dismissal of the debtor's case.

The House Report's discussion of § 507 clearly assumed that the government's priority would apply even though the collection of taxes was stayed.  The Report reads:

> This priority replaces a similar priority provision now found in the Bankruptcy Act; the requirement that the taxes not have been reported is dropped and a time limit is imposed.  The priority should apply if assessment or collection is stayed whether or not the debtor reported the taxes.  Creditors are on notice that the taxes are being disputed, and the taxing authority has not had an adequate opportunity to assess or collect the taxes.  The time limit is imposed because the taxing authority should not be given

-7-

priority for taxes that are unassessed or uncollected through a lack of due diligence.

H. Rep. No. 595, 95th Cong., 1st Sess. 191 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6151 (emphasis added) (footnote omitted).[0]

The legislative history of § 507 also sets forth the reasons the government enjoyed priority status under the former Bankruptcy Act:

> A taxing authority is given preferred treatment because it is an involuntary creditor of the debtor. It cannot choose its debtors, nor can it take security in advance of the time that taxes become due. The Bankruptcy Act gives the taxing authority three years to pursue delinquent debtors and obtain secured status. If a debtor files bankruptcy before that three-year period has run, the taxing authority is given a priority in order to compensate for its temporarily disadvantaged position.

H. Rep. No. 595, 95th Cong., 1st Sess. 190 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6150.[0]

---

[0]Taylor does not contend his taxes were "uncollected through a lack of due diligence." Id.

[0]Significantly, the House Report continues:

> There is an additional reason for the priority. Because it takes a taxing authority time to locate and pursue delinquent tax debtors, taxes are made nondischargeable if they become legally due and owing within three years before bankruptcy. An open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due. The priority is tied to this nondischargeability provision, in order to aid the debtor's fresh start. By granting the nondischargeable tax a priority, more of it will be paid in the bankruptcy case, leaving less of a debt for the debtor after the case.

Id. (footnotes omitted).

-8-

Section 507 grants a priority for taxes on income that was taxable before bankruptcy and for which a return is last due within three years prior to the date of the filing of the petition. This section simply replaced a similar priority provision under the old Bankruptcy Act. Bankruptcy Act, §§ 17(a)(1)(c), 64(a)(4) (then codified, respectively, at 11 U.S.C. §§ 35(a)(1)(c), 104(a)(4) (1970)).

The time limitations within § 507 merely reflect the existing limitation periods in income tax cases under 26 U.S.C. §§ 6501 and 6502, which are suspended during bankruptcy proceedings by § 6503(h). Congress need not provide an explicit stay period under § 507 when the three-year limitation period is otherwise stayed under other provisions of the Act. Priority status is directly tied to payment of the government's unsecured claims and the debtor's discharge. The three-year limitation period, stayed under §§ 108(c) and 6503(h) as to assessment and collection, cannot affect the priority status provided to the government during a bankruptcy proceeding which did not otherwise culminate in payment of the government's claims and the attendant discharge of the debtor. To hold otherwise would defeat long-standing congressional concerns over nondischargeability and the disadvantaged status of the government as to unpaid taxes which led to enactment of the priority status in the first place.

In enacting § 507(a)(7)(A), Congress sought to strike a balance between three competing interests:

> (1) general creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years; (2) the

debtor, whose "fresh start" should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting.

S. Rep. No. 989, 95th Cong., 2d Sess. 14 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5800. On the one hand, an accumulation of stale tax claims would defeat the purpose of rehabilitating the debtor with a fresh start. Accordingly, Congress limited the lookback period to three years. On the other hand, the government is unable to choose its debtors or otherwise to protect itself as would a secured creditor, and an open-ended dischargeability policy would permit the discharge of tax debts before the government has time to collect.

We deem it obvious that these sections, read together, evidence a congressional concern to preserve the collectability of tax claims. Section 507(a)(7)(A)(i) simply provides priority as to those taxes which fall within the three-year limitation period. The extension of time provided within § 108(c) of the Bankruptcy Code and § 6503(h) of the Internal Revenue Code would be meaningless if debtors could discharge their tax liability by filing successive bankruptcies. As the Ninth Circuit has observed, § 108's incorporation of § 6503 "reflects a policy determination that it would be unfair to allow the statute [of limitations] to run against the government's right to enforce a tax lien when, even if the government did bring suit, it couldn't collect because it couldn't get at the taxpayer's assets." In re West, 5 F.3d 423, 426 (9th Cir. 1993) (interpreting § 507(a)(7)(A)(ii)) (quotations omitted), cert. denied, 114 S.

-10-

Ct. 1830 (1994); see also In re Richards, 994 F.2d 763, 765 (10th Cir. 1993) (noting that "Congress intended to give the government the benefit of certain time periods to pursue its collection efforts") (interpreting § 507(a)(7)(A)(ii)); In re Montoya, 965 F.2d 554, 556 (7th Cir. 1992) (approving Brickley's conclusion that "such a result would sanction tax avoidance schemes since debtors could simply file a subsequent bankruptcy petition after three years had passed and deliberately avoid paying their tax debts"); Brickley, 70 B.R. at 116 ("Congress did not intend to allow tax avoidance through bankruptcy by permitting the discharge of the debtor before the taxing authority has had a fair opportunity to collect taxes due."). Federal law was designed to safeguard against tax avoidance.

In summary, it seems clear that Congress intended to provide the government a full and unimpeded three years to collect income taxes; it did not intend to leave a loophole for debtors to engage in tax avoidance, as "the burden of making up the revenues thus lost must be shifted to other taxpayers." S. Rep. No. 989, 95th Cong., 2d Sess. 14 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5800; see also United States v. Ron Pair Enters., Inc., 489 U.S. 235, 243 (1989) (departure from strict construction of Bankruptcy Code is warranted if it would "conflict with any other section of the Code, or with any important state or federal interest," or "a contrary view suggested by the legislative history") (footnote omitted).[0]

---

[0]Taylor also contends the government could have protected its interests during the pendency of the Michigan bankruptcy by

-11-

The judgment of the district court is affirmed.

AFFIRMED.

---

filing a Motion for Relief from the Automatic Stay, which, he notes, would have been granted upon a showing of cause. 11 U.S.C. § 362(d)(1). As the Ninth Circuit has noted, although in a different context, this argument "assumes relief from the stay would have been granted," In re Hunters Run, Ltd. Partnership, 875 F.2d 1425, 1428 (9th Cir. 1989), and would require the government to do something to perfect its tax lien which the Code does not require, id. It is unreasonable to suggest, particularly after the fact, that the bankruptcy court could have been expected to grant relief beyond that contemplated by payment of the government under the installment plan.