**In re James Curtis PALMER, Debtor.**

**James Curtis Palmer, Plaintiff–Appellee,**

**v.**

**Internal Revenue Service, Defendant–Appellant.**

**BAP No. 98–8056.**

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued Dec. 2, 1998.

Decided Feb. 2, 1999.

Revenue Service has appealed the bankruptcy court's determination that the Debtor's income tax debts for 1991 and 1992 are dischargeable because the debts were shown on returns due more than three years before the Debtor filed this bankruptcy petition. The bankruptcy court rejected the argument of the Internal Revenue Service that the Debtor's previous bankruptcy case tolled the three-year look-back period in 11 U.S.C. § 507(a)(8)(A)(i).

The Panel follows the overwhelming majority of the courts of appeals that have considered the issue and concludes that although the text of § 507(a)(8)(A)(i) supports the Debtor's position, the text should not be applied because it is at odds with the clear Congressional intent to provide the IRS with a full three-year opportunity to collect a tax debt before that tax debt becomes dischargeable in bankruptcy. Accordingly, the order of the bankruptcy court is **REVERSED**.

### I. ISSUE ON APPEAL

The issue on appeal is whether the three-year look-back period in 11 U.S.C. § 507(a)(8)(A)(i) for priority income tax debts is tolled during a prior bankruptcy case filed by a debtor.

### II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989) (citations omitted). "Determinations of nondischargeability under § 523(a) are final orders for appeal purposes." *Providian Bancorp v. Shartz (In re Shartz),* 221 B.R. 397, 398 (6th Cir. BAP 1998) (citations omitted).

Conclusions of law are reviewed de novo. *Nicholson v. Isaacman (In re Isaacman),* 26 F.3d 629, 631 (6th Cir.1994). "De

ARGUED AND ON BRIEF: Karen A. Smith, U.S. DEPARTMENT OF JUSTICE, TAX DIVISION, Washington, D.C., for Appellant.

ARGUED AND ON BRIEF: Robert M. Whittington, Jr., ELK, ELK & WHITTINGTON, Akron, Ohio, for Appellee.

Before: RHODES, STOSBERG, and WALDRON, Bankruptcy Appellate Panel Judges.

### OPINION

Among the debts excepted from the discharge in Chapter 7 are tax debts accorded priority for distribution under 11 U.S.C. § 507(a)(8). 11 U.S.C. § 523(a)(1). This includes income tax debts shown on returns due within three years before bankruptcy. 11 U.S.C. § 507(a)(8)(A)(i). The Internal

novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks )*, 219 B.R. 468, 469 (6th Cir. BAP 1998) (citing *In re Schaffrath*, 214 B.R. 153, 154 (6th Cir. BAP 1997)). Whether the look-back period in § 507(a)(8)(A)(i) is tolled by a prior bankruptcy proceeding is a question of statutory interpretation and is reviewed de novo. *West v. United States (In re West )*, 5 F.3d 423, 425 (9th Cir.1993), *cert. denied,* 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994).

## III. FACTS

On February 25, 1993, Palmer ("the Debtor") filed a Chapter 13 bankruptcy case disclosing federal income tax obligations for 1991 and 1992. The IRS filed an amended proof of claim for those taxes, asserting a priority claim of $5,116.30 and an unsecured claim of $79.89. The Debtor voluntarily dismissed that Chapter 13 case on June 1, 1995, before completing plan payments. The IRS received $861 on its priority claim.

On August 27, 1997, the Debtor filed the present case under Chapter 7, again disclosing his federal tax obligations for 1991 and 1992. The IRS again filed a proof of claim for those taxes, asserting a secured claim of $18,024.20, a priority claim of $1,348.45, and an unsecured claim of $180.69.

On September 5, 1997, the Debtor filed an adversary proceeding to determine the dischargeability of his 1991 and 1992 income taxes. The IRS filed a motion for summary judgment, arguing that these income taxes are nondischargeable priority taxes because Palmer's previous Chapter 13 bankruptcy tolled the three-year look-back period in § 507(a)(8)(A)(i). The bankruptcy court denied the motion for summary judgment, holding that the three-year look-back period would not be suspended unless there was misconduct by the Debtor. The bankruptcy court then conducted a trial and determined that there was no misconduct by the Debtor. Accordingly, the bankruptcy court held that the tax debt for 1991 and 1992 is dischargeable. The IRS appealed.

## IV. DISCUSSION

The Debtor argues that his 1991 and 1992 income tax debts are dischargeable because they were shown on returns due more than three years before he filed this Chapter 7 bankruptcy case under a plain meaning analysis of §§ 507(a)(8)(A)(i) and 523(a)(1). Section 507(a)(8)(A)(i) provides:

(a) The following expenses and claims have priority in the following order:

. . . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition[.]

11 U.S.C. § 507(a)(8)(A)(i).

Section 523(a)(1) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) · of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[.]

11 U.S.C. § 523(a)(1).

There is case authority applying the plain meaning of these provisions to reach the result that the Debtor seeks. *See, e.g., Quenzer v. United States (In re Quenzer )* 19

F.3d 163, 165 (5th Cir.1993); *Nolan v. United States (In re Nolan )*, 205 B.R. 885, 887 (Bankr.M.D.Tenn.1997); *Turner v. United States (In re Turner )*, 182 B.R. 317, 337 (Bankr.N.D.Ala.1995), *adhered to on reconsideration,* 195 B.R. 476 (Bankr.N.D.Ala. 1996); *In re Macko,* 193 B.R. 72, 74–75 (Bankr.M.D.Fla.1996); *Clark v. Internal Revenue Serv. (In re Clark )*, 184 B.R. 728, 730 (Bankr.N.D.Tex.1995); *Gore v. United States (In re Gore )*, 182 B.R. 293, 298–299 (Bankr.N.D.Ala.1995).

Some of these cases recognize that under this literal reading of these two sections, a debtor can file successive bankruptcies in a simple two-step maneuver to pay only a portion of the tax debt and make the balance dischargeable. First, when the IRS begins to collect an income tax debt shown on a return due within three years before filing a bankruptcy, the debtor files a Chapter 13 case to invoke the automatic stay against collecting the debt, and begins to pay the debt as a priority. *See* 11 U.S.C. § 1322(a)(2). Second, when more than three years have passed after the due date of the return, the debtor causes the dismissal of the Chapter 13 case and thereafter files a new bankruptcy case under Chapter 7. In this scenario, although the debtor may have partially paid the priority tax debt through the uncompleted Chapter 13 plan, the unpaid balance would be dischargeable in the Chapter 7 case under the plain meaning of §§ 507(a)(8)(A)(i) and 523(a)(1). In response to the possibility of manipulation by the debtor, at least some of the courts that apply the plain meaning of these provisions nevertheless hold the tax debt nondischargeable as a remedy for the debtor's abuse of process under 11 U.S.C. § 105. *See, e.g., Nolan v. United States (In re Nolan )*, 205 B.R. 885, 887 (Bankr.M.D.Tenn.1997). The analysis in the above cases was followed by the bankruptcy court in this case.

A majority of courts have held that the plain meaning of the applicable provisions leads to an absurd result that is inconsistent with the clear Congressional intent to allow the IRS a full three years to collect an income tax debt before it become dischargeable. *Waugh v. Internal Revenue Serv. (In re Waugh )*, 109 F.3d 489, 493 (8th Cir.) (collecting cases), *cert. denied,* —— U.S. ——, 118 S.Ct. 80, 139 L.Ed.2d 38 (1997). Four other courts of appeals have also reached this result. *In re Taylor,* 81 F.3d 20, 25 (3rd Cir.1996); *West,* 5 F.3d at 426; *United States v. Richards (In re Richards )*, 994 F.2d 763, 765–66 (10th Cir.1993); *Montoya v. United States (In re Montoya )*, 965 F.2d 554, 558 (7th Cir.1992). *See also Pagnac v. Minnesota Dept. of Revenue (In re Pagnac )*, 228 B.R. 219 (8th Cir. BAP 1998). These courts toll the three-year look-back period during the pendency of any previous bankruptcy. *See also* Hon. William H. Brown & Daniel A. Hawtof, *Tolling the Three–Year Period for Discharge of Income Taxes: Is There Plain Meaning in § 507(a)(8)(A)(i)?,* 18 Miss. C.L.Rev. 483 (1998).

The Supreme Court has stated that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982), alteration in original). *See also Bob Jones Univ. v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983) ("It is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute[.]"); *United States v. Campos–Serrano,* 404 U.S. 293, 298, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971) ("If an absolutely literal reading of a statutory provision is irreconcilably at war with the clear congressional purpose, a less literal construction must be considered."); *Perry v. Commerce Loan Co.,* 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966) (" 'Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.'" (quoting *United States v. American Trucking Ass'ns, Inc.,* 310 U.S. 534, 543, 60 S.Ct.

1059, 1063, 84 L.Ed. 1345 (1940))). In matters of statutory interpretation, "[a]mbiguity is a creature not of definitional possibilities but of statutory context[.]" *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 555, 130 L.Ed.2d 462 (1994) (citations omitted). " '[W]e do not read these statutory words with the ease of a computer.' " *Kelly v. Robinson,* 479 U.S. 36, 49, 107 S.Ct. 353, 361, 93 L.Ed.2d 216 (1986) (quoting *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966)).

▌ The Sixth Circuit has also noted that although the starting point in cases of statutory construction must be the language of the statute itself, "[t]he court must look beyond the language of the statute, however, when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Vergos v. Gregg's Enters., Inc.,* 159 F.3d 989, 990 (6th Cir.1998) (citations omitted). The Sixth Circuit has further cautioned that " 'Judge Learned Hand has vividly admonished us not to be caught in the trap of language which seems, literally, too broad or too narrow to accommodate the patent legislative purposes.' " *Appleton v. First Nat'l Bank,* 62 F.3d 791, 801 (6th Cir.1995) (quoting *SEC v. F.O. Baroff Co.,* 497 F.2d 280, 282 (2nd Cir.1974) (citations omitted)).

Accordingly, the Panel must look beyond the plain language of the statute in those rare cases in which the language taken in context produces a result demonstrably at odds with Congressional intent. We agree with the courts of appeals that have addressed this issue in concluding that this is such a rare case. Other statutory provisions, as well as legislative history, clearly demonstrate that Congress intended for the IRS to have a full three-year opportunity to collect an income tax debt before it becomes dischargeable in bankruptcy.

The three-year look-back period of § 507(a)(8)(A)(i) represents a balancing of three competing interests, as described in the legislative history:

A three-way tension thus exists among (1) general creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose 'fresh start' should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had a reasonable time to collect or which the law has restrained him from collecting.

S.REP. No. 95–989, at 14 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800. *See also Waugh,* 109 F.3d at 492 (quoting same legislative history).

"Congress realized that '[a]n open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due.' " *Id.* (quoting H.R.REP. No. 95–595, at 190 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6150 5800).

Although § 507(a)(8)(A)(i) does not contain an explicit suspension of its three-year look-back period, it is clear that Congress intended 11 U.S.C § 108(c) and 26 U.S.C. § 6503(b) and (h) to toll that look-back period during a previous bankruptcy. Section 108(c) provides:

Except as provided in section 524 of this title, if applicable nonbankruptcy law … fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor … and such period has not expired before the date of the filing of the petition, then such period does not expire until …

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case[.]

11 U.S.C. § 108(c)(1).

The corresponding provision in the Internal Revenue Code, 26 U.S.C. § 6503, provides:

(b) The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of

any State or of the District of Columbia, and for 6 months thereafter.

. . . .

(h) The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—

    (1) for assessment, 60 days thereafter, and

    (2) for collection, 6 months thereafter.

26 U.S.C. § 6503(b) and (h).

The legislative history of § 108(c) explains the broad purposes that Congress intended:

In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for 6 months thereafter (sec. 6503(b) of the Code). The amendment applies this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of a nondischargeable Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in the control or custody of the bankruptcy court. This rule will provide the Internal Revenue Service adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.

S.REP. No. 95–989, at 31 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5816–17. *See also Waugh,* 109 F.3d at 493 (quoting same legislative history).

With regard to the priority and dischargeability of taxes, the legislative history of the *Bankruptcy Code* states:

A taxing authority is given preferred treatment because it is an involuntary creditor of the debtor. It cannot choose its debtors, nor can it take security in advance of the time that taxes become due. The Bankruptcy Act gives the taxing authority three years to pursue delinquent debtors and obtain secured status. If a debtor files bankruptcy before that three-year period has run, the taxing authority is given a priority in order to compensate for its temporarily disadvantaged position.

H.R.REP. No. 595, 95th Cong., 1st Sess. 190 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6150 (footnote omitted). *See also Taylor,* 81 F.3d at 23–24 (quoting same legislative history).

These statutory provisions and their legislative history have persuaded the majority of the courts of appeals that the look-back period of § 507(a)(8)(A)(i) is tolled during a prior bankruptcy case. *West,* 5 F.3d at 426 ("Because literal interpretation of § 108(c) would frustrate the Bankruptcy Code's intricate scheme for the payment of tax claims, we do not adopt the debtors' 'plain language' admonitions."); *Taylor,* 81 F.3d at 24 ("The extension of time provided within § 108(c) of the Bankruptcy Code and § 6503(h) of the Internal Revenue Code would be meaningless if debtors could discharge their tax liability by filing successive bankruptcies."); *Montoya,* 965 F.2d at 558 ("Tolling the look-back period during the time the IRS claims were disallowed ensures that proceedings in the bankruptcy court do not prevent the IRS from having adequate time to bring an action against delinquent taxpayers."); *Waugh,* 109 F.3d at 493 ("If we applied the plain meaning of section 108(c) and held that the priority period of section 507(a)(8)(A)(i) is not suspended during bankruptcy proceedings, Congress's intent to afford the IRS a three-year priority period for the collection of taxes certainly would be frustrated.") *See also Richards,* 994 F.2d at 765 ("The Bankruptcy Court's order suspending the 240–day period [of § 507(a)(8)(A)(ii) ] while [the debtor] was in his first bankruptcy fulfills and preserves Congress's intent to afford the government certain time periods to pursue collection efforts, and at the same time prevents the debtor from avoiding priority by prolonging the initial bankruptcy proceeding." (footnote omitted.)) The many lower court decisions reaching this conclusion are cited in *Waugh,* 109 F.3d at 493 n. 8 and in *West,* 5 F.3d at 427 n. 9.

The Panel agrees that Congress clearly intended to give the IRS a three-year window of opportunity to collect taxes before the

taxes become dischargeable in bankruptcy. As *Taylor* explained, the fact that there is no explicit provision within § 507(a)(8)(A)(i) which tolls the three-year look-back provision during a period when an automatic stay is in effect under § 362 cannot defeat the statutory purpose of either the Bankruptcy Code or the Internal Revenue Code. *Taylor,* 81 F.3d at 22–23.

The literal language of § 108(c) provides for an extension of time in nonbankruptcy proceedings involving nonbankruptcy law. Refusing to apply this extension of time provision to § 507(a)(8)(A)(i) leads to a result " 'plainly at variance with the policy of the [Bankruptcy and Internal Revenue Codes] as a whole.' " *Perry,* 383 U.S. at 400, 86 S.Ct. 852 (citation omitted).

Finally, the Panel notes that this result not only protects against manipulation by a dishonest debtor, but also accomplishes the anticipated result for a debtor who proceeds with the required good faith in the initial Chapter 13 case. By voluntarily filing a Chapter 13 case, a debtor agrees to pay all priority tax claims in full through the plan. 11 U.S.C. § 1322(a)(2). The Chapter 13 debtor must also know that the discharge is entered only after the debtor completes payments under the plan and pays off the priority tax debts. 11 U.S.C. § 1328(a). Accordingly, Chapter 13 does not contemplate a discharge of any unpaid debt for priority taxes, but rather contemplates that the debtor will fully pay all such taxes, whether through plan completion or otherwise. Moreover, that intent exists even if the debtor is granted a hardship discharge under § 1328(b), because § 1328(c)(2) excludes the priority tax debt from that discharge. Correspondingly, that intent is carried through to the Chapter 7 process by § 523(a)(1), which makes these tax debts nondischargeable in a Chapter 7 case. *See Taylor,* 81 F.3d at 23.

The Panel concludes that a literal reading of §§ 507, 523 and 108 leads to a result that is demonstrably at odds with the Congressional intent to give the IRS a three-year opportunity to collect taxes. Accordingly, the Panel follows the majority of courts and holds that the provision for extending time in

§ 108(c) tolls the three-year look-back period in § 507(a)(8)(A)(i). The time in a prior bankruptcy is not included in determining whether a tax debt is due within three years before the filing of a bankruptcy petition.

## V.  CONCLUSION

The order of the bankruptcy court discharging the Debtor's 1991 and 1992 tax debts is **REVERSED**.

STOSBERG, dissenting.

The panel accurately acknowledges that ample authority supports the trial court, but then rejects the plain meaning approach to achieve what it perceives to be the desired result. Nowhere in the thousands if not millions of pages of federal statutes does it say that the IRS should be treated differently when it comes to statutory interpretation. Application of the plain language of the statute does not produce a result demonstrably at odds with the congressional intent as stated by the panel. *See United States v. Ron Pair Enters. Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). Certainly, it is not an "absurd" result as the panel suggests. As noted by Judge Lundin in *Nolan,* if Congress intended to automatically suspend the three year period during which the taxpayer was a debtor in a prior bankruptcy case, a statement of this intent would be found somewhere in the Code. *Nolan v. United States (In re Nolan),* 205 B.R. 885, 890 (Bankr.M.D.Tenn.1997).

Further troubling is the effect of the panel's holding, which will discourage debtors from at least trying to pay their taxes because the chapter 13 route effectively extends the collection period for the IRS, whereas the chapter 7 or non-filing route leaves it alone. The panel's holding compels debtor's counsel to advise the client that you can try to pay in a chapter 13 but the collection period for the IRS will be extended. The result effectuated by the panel's ruling is that those debtors who attempt to pay in a chapter 13 are penalized while those persons who evade their taxes are rewarded. The Bankruptcy Code is designed to protect the honest but unfortunate debtor and not act as a sword for the IRS.

The real irony of the panel's approach is that it ignores the fact that the same statutory scheme that it rejects also protects the IRS by making the tax claim a priority in the chapter 13. Equitable tolling of the three year look back period is the same approach rejected by the United States Supreme Court in *United States v. Noland (In re Noland)*, 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). *See Nolan,* 205 B.R. at 892. *See also Smith v. United States,* 96 F.3d 800 (6th Cir.1996).

The prospect that debtors will abuse the IRS does not justify ignoring the plain meaning of the statute. Debtors that want to abuse the system rarely propose to pay their creditors. Rather, they use serial filings to evade creditors. Section 105 and other good faith provisions offer plenty of relief to the IRS and other creditors to combat the abusers and that is the approach that the bankruptcy court correctly employed. Protections against debtor misconduct are embedded in the Code. *Nolan,* 205 B.R. at 891. We adopt the reasoning of *Nolan* and its forerunner, *In re Turner,* 182 B.R. 317 (Bankr.N.D.Ala.1995), *adhered to on reconsideration,* 195 B.R. 476 (Bankr.N.D.Ala. 1996). On the basis of the holdings in those cases, I respectfully dissent and would affirm the bankruptcy court.