*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0228P (6th Cir.)
File Name: 00a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: JAMES CURTIS PALMER,
                                                    *Debtor.*

-------------------------------------

JAMES CURTIS PALMER,
                                                    *Appellant,*


                        *v.*


UNITED STATES OF AMERICA,
INTERNAL REVENUE SERVICE,
                                                    *Appellee.*

No. 99-3257

Appeal from the Bankruptcy Appellate Panel
of the Sixth Circuit.
No. 97-52403—Marilyn Shea-Stonum, Bankruptcy Judge.

Argued: February 3, 2000

Decided and Filed: July 14, 2000

Before: NELSON, COLE, and CLAY, Circuit Judges.

1

_____

**COUNSEL**

**ARGUED:**    Robert M. Whittington, ELK, ELK & WHITTINGTON, Akron, Ohio, for Appellant.  Thomas J. Sawyer, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION, TAX DIVISION, Washington, D.C., for Appellee. **ON BRIEF:**    Robert M. Whittington, ELK, ELK & WHITTINGTON, Akron, Ohio, for Appellant.  Bruce R. Ellisen, Thomas J. Sawyer, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION, TAX DIVISION, Washington, D.C., for Appellee.

_____

**OPINION**

_____

R. GUY COLE, JR., Circuit Judge.  Plaintiff-Appellant James Curtis Palmer, a Chapter 7 debtor in bankruptcy, appeals the decision of the Bankruptcy Appellate Panel of the Sixth Circuit ("BAP"), which reversed the bankruptcy court's holding that Palmer's 1991 and 1992 tax debts are dischargeable.  *See Palmer v. Internal Revenue Serv. (In re Palmer)*, 228 B.R. 880 (B.A.P. 6th Cir. 1999).  For the reasons discussed below, we **REVERSE** the decision of the BAP and **AFFIRM** the holding of the bankruptcy court.

## I.  BACKGROUND

The parties do not dispute the relevant facts of this case. Palmer filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Ohio on February 25, 1993.  During the pendency of Palmer's Chapter 13 case, the Internal Revenue Service ("IRS") filed a proof of claim indicating that Palmer owed 1991 income taxes. Palmer voluntarily dismissed the Chapter 13 case on June 1, 1995, before completing all his plan payments.  Palmer had paid off only a small portion of his 1991 tax debt at the time that his Chapter 13 case was dismissed.  During the time that

manipulation of the bankruptcy system, the bankruptcy court was correct to discharge the tax debts pursuant to § 523(a)(1)(A). We **AFFIRM** the holding of the bankruptcy court, and **REVERSE** the holding of the BAP.

Palmer's Chapter 13 case was pending, the IRS was stayed from either assessing or collecting on Palmer's tax debts by 11 U.S.C. § 362(a)(6).

On August 27, 1997, more than two years after the dismissal of his Chapter 13 case, Palmer filed a Chapter 7 bankruptcy petition. During the twenty-seven-month period between the dismissal of Palmer's Chapter 13 case and the filing of his Chapter 7 petition, the IRS assessed Palmer's 1991 tax obligations, as well as tax obligations from 1992. In October 1996, the IRS filed federal tax liens against Palmer for the outstanding 1991 and 1992 tax liabilities. Despite assessing the tax obligations and filing the liens, the IRS did not move to garner Palmer's wages or to collect on his tax debts.

After Palmer filed his Chapter 7 petition, the IRS filed a new proof of claim for the 1991 and 1992 tax debts. Palmer filed a complaint in an adversary proceeding, seeking the court's determination that his 1991 and 1992 tax debts were dischargeable. Both parties moved for summary judgment. Palmer argued that his 1991 and 1992 tax debts were dischargeable because they arose prior to the three-year look-back period prescribed by § 507(a)(8)(A)(i). *See* 11 U.S.C. §§ 523(a)(1)(A), 507(a)(8)(A)(i). The IRS argued that Palmer's tax debts were not dischargeable because they fell within the three-year period, assuming, as the IRS maintained, that the period was 'tolled' or extended during Palmer's Chapter 13 bankruptcy.[1] The bankruptcy court rejected the IRS's argument that the three-year period in § 507(a)(8)(A)(i) was tolled as a matter of law by Palmer's

---

[1]The IRS also argued (and continues to argue) that its time period for collecting Palmer's tax debts is extended an additional six months -- that is, in addition to the time that it alleges that the § 507(a)(8)(A)(i) period was tolled during the pendency of Palmer's Chapter 13 bankruptcy -- pursuant to I.R.C. § 6503(h)(2). Because our holding that nothing operates to toll automatically the § 507(a)(8)(A)(i) look-back period means that the debts at issue in this case arose more than three years and six months prior to the running of the look-back period, we need not address the application of § 6503(h) to the specific facts presented here.

prior Chapter 13 bankruptcy, but held that it did have the equitable power to toll the period under 11 U.S.C. § 105,[2] if the IRS could prove debtor misconduct. Accordingly, the court denied summary judgment in order to hear evidence at trial of Palmer's conduct. At trial, the court found that the IRS failed to show any evidence of misconduct by Palmer. The court also found that the IRS had declined its invitation to present evidence, pursuant to 11 U.S.C. § 523(a)(1)(C), of Palmer's manipulation to avoid taxes. *See Toti v. United States (In re Toti)*, 24 F.3d 806, 808 (6th Cir. 1994). Because the IRS failed to show either misconduct or manipulation of the bankruptcy process by Palmer, the court found that there was no reason to toll the § 507(a)(8)(A)(i) period and held that Palmer's 1991 and 1992 tax debts were dischargeable.

The government appealed the bankruptcy court's decision regarding the dischargeability of Palmer's 1991 and 1992 tax debts to the BAP. In a 2-1 decision, the BAP reversed the bankruptcy court, holding that although the text of § 507(a)(8)(A)(i) contained no tolling provision, the plain text of the statute should not be applied because it conflicted with Congress's intent to provide the IRS with a full three years in which to collect a tax debt before the tax debt becomes dischargeable in bankruptcy. *Palmer*, 228 B.R. at 881. Palmer filed a timely notice of appeal.

---

[2]Title 11 U.S.C. § 105 preserves the equity powers of a bankruptcy court. *See Morgan v. Internal Revenue Serv. (In re Morgan)*, 182 F.3d 775, 779 (11th Cir. 1999). Section 105(a) provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

rejected the IRS's efforts to avoid the plain language of the Bankruptcy Code:

"It is not the Court's role to address perceived inadequacies in [a statute]. What the petitioner asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function."

78 F.3d at 244 (quoting *Wolf Creek Collieries v. Robinson*, 872 F.2d 1264, 1269 (6th Cir. 1989)) (internal quotation omitted; brackets in original).[10]

## V. CONCLUSION

The bankruptcy court's legal analysis in this case was sound. We hold that the three-year look-back period of § 507(a)(8)(A)(i) is not automatically tolled by the filing of a prior bankruptcy petition, but that the government is free to argue that other provisions of the Code -- including § 105(a) and § 523(a)(1)(C) -- require tolling of the look-back period in a particular case. Because Palmer's 1991 and 1992 tax debts arose more than three years prior to the filing of his Chapter 7 bankruptcy petition, and because the IRS failed to show that Palmer was guilty of any misconduct or

---

[10]Both the IRS and the BAP raise concerns that the absence of an automatic tolling rule in § 507(a)(8)(A)(i) creates the possibility that a debtor will manipulate the bankruptcy system by first filing a Chapter 13 petition to invoke the automatic stay against collection of his tax debts, *see* 11 U.S.C. § 362, and later filing a Chapter 7 petition when the three-year look-back period of § 507(a)(8)(A)(i) has passed. *See Palmer*, 228 B.R. at 883. First, we note that this argument is open to debate. *See id.* at 886-87 (Stosberg, J., dissenting). More important, we decline to enter the debate because it concerns a matter of policy that we may not reach in the absence of an ambiguous statute. *See Koenig Sporting Goods*, 203 F.3d at 988; *Laurain*, 113 F.3d at 597. We further note that, as the bankruptcy court held, § 105(a) and § 523(a)(1)(C) provide sufficient means for a bankruptcy court to address manipulation by a debtor in a given case.

product of substantial consideration by Congress, and is not prone to judicial tinkering: "it is worth recalling that Congress worked on the formulation of the Code for nearly a decade. . . . [A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *Ron Pair Enters.*, 489 U.S. at 240-41.

Likewise, our own cases have expressed an extreme reluctance to amend the Bankruptcy Code from the bench. Rather, our cases demonstrate that we will read the Bankruptcy Code "in a 'straightforward' manner," *Smith v. United States (In re Smith)*, 96 F.3d 800, 803 (6th Cir. 1996) (quoting *Bartlik v. United States Dept. of Labor*, 62 F.3d 163, 167 (6th Cir. 1995)), and apply the plain meaning of the Code wherever possible. *See Dublin Securities, Inc. v. Helmer (In re Dublin Securities, Inc.)*, -- F.3d --, Nos. 99-3337, 99-3344, 2000 WL 726474, at *2 (6th Cir. June 7, 2000) (applying plain language of § 546(a) of Bankruptcy Code to find that two-year limitations period begins running upon appointment of trustee); *Foremost Mfg.*, 137 F.3d at 923 (citing *Ron Pair Enters.*, 489 U.S. at 240-4, and applying plain meaning of § 506(c) of Bankruptcy Code to reverse bankruptcy court's imposition of administrative surcharges); *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 600 (6th Cir. 1997) (applying plain meaning of Fed. R. Bankr. P. 4003(b) to 30-day period during which court may grant motion to extend time for filing objection to debtor's claim of exemption, even though "a literal reading of Rule 4003(b) may be impractical and unfair"); *Smith*, 96 F.3d at 802 (interpreting two-year limitations period of § 523(a)(1)(B)(ii) strictly and declining to apply "mailbox rule" to filing of tax returns); *Aberl*, 78 F.3d at 244 (applying plain language of § 507(a)(7)(A)(ii)[9] to reject IRS's argument that pre-assessment offer in compromise tolls running of 240-day limitations period). As we reiterated in *Aberl*, another bankruptcy case in which we

---

[9] *See supra*, note 3.

---

## II.  STATUTORY OVERVIEW

As a Chapter 7 debtor, Palmer is entitled to discharge of most debts he incurred prior to filing for bankruptcy. *See* 11 U.S.C. § 727.  However, 11 U.S.C. § 523 provides for exceptions to the discharge rule.  One of the § 523 exceptions is for certain tax debts as defined in § 507(a)(8).  *See* 11 U.S.C. § 523(a)(1)(A).  Section 507(a)(8)(A)(i) describes unsecured tax claims for which the debtor's tax return was due within three years prior to the filing of the debtor's bankruptcy petition.  Thus, in the normal course of events, § 523(a)(1)(A) incorporates § 507(a)(8)(A)(i) to prevent the discharge of a debtor's tax obligations if the taxes were due within three years prior to the filing of the debtor's bankruptcy petition.

At issue in Palmer's current Chapter 7 case is whether the "three-year look-back period"of § 507(a)(8)(A)(i) runs unhindered or is tolled by a prior bankruptcy. While Palmer's 1993 Chapter 13 case was pending, the government, along with other creditors, was automatically stayed from collecting on Palmer's debts. *See* 11 U.S.C. § 362. The BAP found that § 507(a)(8)(A)(i)'s three-year look-back period for unsecured IRS claims was tolled during this time. *Palmer*, 228 B.R. at 886. In so doing, Palmer argues, the BAP erroneously ignored the plain meaning of § 523(a)(1) and § 507(a)(8)(A)(i).

## III.  STANDARD OF REVIEW

"Whether an appeal comes to our court by way of a district court or the BAP, our review is of the bankruptcy court's decision." *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 696 n.1 (6th Cir. 1999).  We review the bankruptcy court's conclusions of law de novo and its factual determinations for clear error. *See id.*  Further, statutory interpretation is a question of law we review de novo. *See Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986, 988 (6th Cir. 2000).

## IV.  DISCUSSION

Palmer argues that the BAP erred by failing to apply the plain meaning of § 507(a)(8)(A)(i) to his 1991 and 1992 tax debts.  The IRS acknowledges that the plain wording of § 507(a)(8)(A)(i) does not require tolling of the three-year period.  The BAP also acknowledged that "the text of § 507(a)(8)(A)(i) supports [Palmer's] position," *Palmer*, 228 B.R. at 881, but found, as the IRS argues, that the legislative history of the Bankruptcy Code shows Congress's intent that § 507(a)(8)(A)(i) be tolled by the filing of a prior bankruptcy petition. Because Palmer's tax debts are clearly dischargeable if we apply the plain wording of the Bankruptcy Code, we must determine whether there is any reason to look beyond the plain meaning of § 507(a)(8)(A)(i).

### A.

We begin our analysis of the meaning of § 507(a)(8)(A)(i) "where all such inquiries must begin:  with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).  If the language of the statute is clear, this court's inquiry is at an end:  "where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* (internal quotation omitted); *see also Koenig Sporting Goods*, 203 F.3d at 988 ("When a statute is unambiguous, resort to legislative history and policy considerations is improper.").  Only in those rare instances in which "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters . . . or when the statutory language is ambiguous" will we look beyond the statute's plain wording to divine the intent of its drafters. *Koenig Sporting Goods*, 203 F.3d at 988 (quotation marks and citation omitted); *see also Ron Pair Enters.*, 489 U.S. at 242 (stating that plain meaning of legislation is conclusive except in "rare cases" in which literal interpretation will produce result "demonstrably at odds with" intentions of its drafters) (internal quotation marks and citation omitted).

§ 105(a) to toll the § 507(a)(8)(A)(i) look-back period, but decline to hold that it does so as a matter of law.  *See Quenzer*, 19 F.3d at 165; *Nolan*, 205 B.R. at 888 n.17. Bankruptcy courts are courts of equity, and they "have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990). Although these equitable powers are sufficient to toll the § 507(a)(8)(A)(i) look-back period if the facts of a given case require such an action (for instance, if the debtor engages in misconduct), they are not so broad as to permit a bankruptcy court to create an *automatic* tolling provision that Congress expressly failed to include.  *See Architectural Bldg. Components v. McClarty (In re Foremost Mfg. Co.)*, 137 F.3d 919, 924 (6th Cir. 1998) ("Our precedent tells us that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.") (internal quotation marks and citation omitted); *see also United States v. Noland*, 517 U.S. 535, 536 (1996) (holding that bankruptcy court may use equitable powers pursuant to § 510(c) to subordinate a tax claim based on the facts of a particular case, but may not equitably subordinate such claims on a categorical basis in derogation of congressional priority scheme).

### C.

The IRS's own brief provides support for our conclusion that § 108(c) and § 105(a) are insufficient to toll automatically the three-year look-back period of § 507(a)(8)(A)(i).  At several points in its brief, the IRS asserts that Congress simply failed to consider the impact of multiple bankruptcy filings in determining whether a debtor's tax obligations should be discharged under § 507(a)(8)(A)(i); nonetheless, the IRS argues, the other sections within the Bankruptcy Code and the I.R.C. discussed *supra* evidence clear congressional intent to toll § 507(a)(8)(A)(i) during prior bankruptcies. We fail to see how Congress's purported failure even to consider the crafting of a substantive provision of the Bankruptcy Code could persuade us to write in what Congress left out. As the Supreme Court has instructed, the Bankruptcy Code is the

wording of §108(c) could not be more clear:  that section applies only to "*nonbankruptcy* law." *See* 11 U.S.C. § 108(c) (emphasis added).  The provisions at issue in this case -- §§ 523(a)(1)(A) and 507(a)(8)(A)(i) -- are, of course, not "nonbankruptcy law."  As such, they are outside the purview of § 108.  *See Morgan*, 182 F.3d at 779; *Quenzer v. United States (In re Quenzer)*, 19 F.3d 163, 165 (5th Cir. 1993); *Nolan*, 205 B.R. at 889.  Further, the fact that Congress provided for various tolling provisions to the limitations period it crafted for purposes of the I.R.C. fails to convince us that Congress intended to craft a similar tolling provision in § 507(a)(8)(A)(i) when the plain language of the Bankruptcy Code states otherwise.[7]  *See Nolan*, 205 B.R. at 888 (holding that "[t]he three year look back in § 507(a)(8)(A)(i) is a substantive element of the government's cause of action under § 523(a)(1)(A), not a statute of limitations," and stating that "[t]he courts that have allowed 'equitable tolling' without proof of debtor misconduct have mistaken the three year look back for a statute of limitations.")

The IRS also points to a second group of cases, which focus on § 105(a), to support its argument that the § 507(a)(8)(A)(i) look-back period is automatically tolled by a prior bankruptcy.  *See Morgan*, 182 F.3d 775; *United States v. Richards (In re Richards)*, 994 F.2d 763 (10th Cir. 1993) (applying § 105(a) to suspend 240-day assessment period of 11 U.S.C. § 507(a)(7)(A)(ii)[8] during time debtor was in prior bankruptcy).  We agree that a bankruptcy court *may* invoke

---

[7] The IRS argues at length that the legislative histories of 11 U.S.C. §§ 507(a)(8)(A)(i), 523(a)(1)(A), 108(c), and I.R.C. § 6503 show Congress's intent to toll the § 507(a)(8)(A)(i) look-back period upon the filing of a bankruptcy petition.  The BAP also relied on the legislative history of these provisions in finding congressional intent to toll the look-back period, 228 B.R. at 884-85, as have other courts.  *See, e.g., Waugh*, 109 F.3d at 493; *Taylor*, 81 F.3d at 23-25.  We find this analysis to be unwarranted because the plain wording of §§ 523(a)(1)(A) and 507(a)(8)(A)(i) is not ambiguous.  *See Koenig Sporting Goods*, 203 F.3d at 988.

[8] *See supra*, note 3.

Section 523(a)(1)(A) provides that tax debts as defined by § 507(a)(8) are excepted from discharge in a Chapter 7 case:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for a tax . . . of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed . . . .

11 U.S.C. § 523(a)(1)(A).  Section 507(a)(8)(A)(i) describes taxes such as the income taxes at issue in this case.  They are:

> allowed unsecured claims of governmental units, only to the extent that such claims are for . . . a tax on or measured by income or gross receipts . . . (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition . . . .

11 U.S.C. § 507(a)(8)(A)(i).  We find the meaning of these sections to be clear and unambiguous.  *See Nolan v. United States Internal Revenue Serv. (In re Nolan)*, 205 B.R. 885, 888 (Bankr. M.D. Tenn. 1997).  They direct that income taxes for which a debtor's return was due within the three years preceding the filing of a bankruptcy petition are *not* dischargeable, and taxes for which the return was due more than three years prior to the filing of a bankruptcy petition *are* dischargeable.  *See Waugh v. Internal Revenue Serv. (In re Waugh)*, 109 F.3d 489, 491 (8th Cir. 1997).  There is no other provision within the Bankruptcy Code that explicitly extends § 507(a)(8)(A)(i)'s three-year period while a debtor is engaged in a bankruptcy proceeding.  *See id.* at 492.  Thus, the plain meaning of the Bankruptcy Code provides that income tax debts are dischargeable in a Chapter 7 bankruptcy if they arise from a tax return due more than three years prior to the filing of the Chapter 7 petition.

**B.**

Despite the lack of ambiguity in the three-year look-back rule, the IRS points to several courts that have found a way around the plain meaning of §§ 523(a)(1)(A) and 507(a)(8)(A)(i). The first group of cases hold that 11 U.S.C. § 108(c), in conjunction with § 6503 of the Internal Revenue Code ("I.R.C."), shows Congress's intent to toll the three-year look-back period. *See Waugh*, 109 F.3d 489; *In re Taylor*, 81 F.3d 20 (3d Cir. 1996); *Montoya v. United States (In re Montoya)*, 965 F.2d 554 (7th Cir. 1992); *see also West v. United States (In re West)*, 5 F.3d 423 (9th Cir. 1993) (tolling 240-day priority period of § 507(a)(7)(A)(ii)[3] during prior bankruptcy). Section 108(c)[4] suspends the running of a *nonbankruptcy* law's period of limitations during the time that an automatic stay is in place. *See* 11 U.S.C. §§ 108(c), 362.

---

[3] *West* was decided before § 507(a)(7)(A)(ii) was re-labeled as § 507(a)(8)(A)(ii) by the Bankruptcy Act of 1994. *See United States v. Aberl (In re Aberl)*, 78 F.3d 241, 243 n.1 (6th Cir. 1996). Former § 507(a)(7)(A)(i), the subject of the instant case, was re-labeled as § 507(a)(8)(A)(i). *Id.*

[4] Title 11 U.S.C. § 108(c) provides:

   (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of--
      (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
      (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

---

Section 6503(b)[5] tolls the I.R.C.'s period of limitations on collection while a taxpayer's assets are in control or custody of a court, plus an additional six months. *See* I.R.C. §§ 6502, 6503(b). Section 6503(h) of the I.R.C.,[6] which applies specifically to cases brought under the Bankruptcy Code, suspends the I.R.C.'s period of limitations during the time that the bankruptcy case prohibits the IRS from collecting from a taxpayer (plus sixty days for assessments and six months for collections). *See* 11 U.S.C. § 6503(h). The IRS argues, as the BAP held, that § 108(c) and § 6503 of the I.R.C. show Congress's intent to preserve the IRS's capacity to pursue claims against debtors who file for bankruptcy for a full three years, and to toll the three-year period when a bankruptcy petition interrupts it. *See Palmer*, 228 B.R. at 884-86.

We find the cases relying upon § 108(c) and § 6503 to be unpersuasive, because they impute a meaning to the Bankruptcy Code that contradicts its plain language. The

---

[5] I.R.C. § 6503(b) provides:

   (b) **Assets of taxpayer in control or custody of court.**--The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court . . . and for 6 months thereafter.

Section 6502 provides for a period of limitation within which the IRS must make collection after making a tax assessment. *See* I.R.C. § 6502.

[6] I.R.C. § 6503 provides at subsection (h):

   (h) **Cases under title 11 of the United States Code.**--The running of the period of limitations provided in section 6501 and 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and--
      (1) for assessment, 60 days thereafter, and
      (2) for collection, 6 months thereafter.